IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERT THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 1844 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CHICAGO TEACHERS' PENSION FUND, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant's motion to dismiss the First Amended Complaint is granted for the reasons stated below.

**BACKGROUND**

Plaintiff, Albert Thomas, a 64-year-old African-American man who is employed as a Senior Accountant by the defendant Chicago Teachers' Pension Fund (the "Fund"), sues the Fund for race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* (Counts I and II); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the IHRA (Counts III and IV); and retaliation in violation of Title VII and the IHRA (Counts V and VI). Thomas also alleges that the Fund violated the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* (Count VII).

Thomas alleges the following. He is a longtime employee of defendant and has been responsible for oversight of the pension funds. After 2012, he began to suspect accounting errors at the Fund. After Thomas reported the errors to his boss, an accounting was performed; it revealed that "payments were made incorrectly" and "there were accounting errors." (ECF No. 20, First Am. Compl. ¶ 14.) Thomas reported these errors to his boss, the Fund's CFO, who told Thomas "not to do anything or report anything to anyone." (*Id.* ¶ 15.) When a new CFO subsequently took over, Thomas "reported the auditor's findings . . . to the new CFO," who also told Thomas "not to report or do anything." (*Id.* ¶¶ 15-16.) Thomas nonetheless told "three other persons," but "realized that no errors were going to be corrected and/or reported to the affected accountholders and/or their representatives." (*Id.* ¶ 18.) Recently, the Fund decided "to arbitrarily come up with an amount vastly different from the true errors, an amount which had been calculated by an independent contractor." (*Id.* ¶ 19.) In 2019, Thomas "pursued legal action" against the Fund in relation to the alleged accounting errors. (*Id.* ¶ 20.) He says that he has suffered retaliation for his reports of errors.

Thomas further alleges that he has applied for "numerous promotions" at the Fund, including in 2019 for a position as Operation Manager of Accounting. He was informed that a written skills test would be required but received no further information or instruction from the Fund. Thomas later found out that the other candidates for the position were given the test topics well in advance of the final interview; this information was withheld from Thomas, which "caused him to be disadvantaged and ultimately denied the position." (*Id.* ¶ 25.) In February 2020, Thomas applied for a position as Accounting Manager. Despite having the requisite experience and qualifications, he did not get an interview. The Fund filled that position with a temporary employee who had no familiarity or history with the Fund and lacked the necessary accounting experience. Thomas had to train that employee on "historical processes and accounting procedures." (*Id.* ¶ 29.)

Shortly after Thomas "requested additional approval to write off about $8 million," the Fund "began to isolate, bully, and harass" him. (*Id.* ¶ 30.) Thomas was accused of insubordination for "requesting a higher approval" for the write-off. Over the last year, Thomas's job duties have "continued to increase." (*Id.* ¶ 35.) He is required to perform tasks associated with the higher-level positions of Accounting Manager and Operations Manager, but he has been denied the salaries that correspond to those positions. In Thomas's view, the Fund is "intentionally denying" him an opportunity to be promoted. (*Id.* ¶ 36.)

Thomas alleges that he has been "treated differently from" employees who are not African American. This treatment "includ[es] being denied promotions and being paid less than other employees." (*Id.* ¶ 37.) He also claims that he has been treated differently "on account of his age" and "is being paid less and denied promotions on the basis of his age." (*Id.* ¶ 38.) Thomas asserts that "several younger, less-qualified female non-African American employees" with less seniority have been "promoted over him." (*Id.* ¶ 39.) Thomas also was treated differently from them; for instance, he was excluded from discussions of computer issues and denied the opportunity to learn different software systems, due to his age. When Thomas complained, he suffered retaliation in the form of "lack of promotion and lesser pay," and the Fund's "agent, Michael Aguilar," "began micro-managing and harassing" him. (*Id.* ¶¶ 40, 43.) Aguilar accused Thomas of "skipping out on work" when Thomas took a restroom break, and he "became very upset" with Thomas when he was late to a meeting with Aguilar as a result of taking time to speak with a board member of the Fund. (*Id.* ¶¶ 44-49.)

Thomas says that the Fund "launched a campaign" to fire him. (*Id.* ¶ 50.) He overheard coworkers talking about "get[ting] rid of" him. (*Id.* ¶ 51.) Aguilar "yell[ed] and scream[ed]" at Thomas in a meeting and, in a later conversation, called him the n-word. (*Id.* ¶¶ 53-55.) Nothing was done when Thomas complained "to an agent of Defendant" about Aguilar's having spoken to him in a derogatory manner. (*Id.* ¶¶ 56-57.) When Thomas and other employees could not come in to work because of a severe snowstorm, Aguilar and another employee gave Thomas "a hard time." (*Id.* ¶¶ 58-59.) Thomas was given a two-page memorandum "warning him about trivial issues and/or mistakes," and he had to sign a written policy regarding leave. (*Id.* ¶ 60.) When he complained to the Fund's board of directors and its hotline about "this retaliation, harassment, and discrimination," the Fund never responded, investigated, or interviewed Thomas. (*Id.* ¶ 61.)

During meetings with Aguilar and other staff, Aguilar regularly instructed Thomas, but no one else, to take notes. Aguilar gave female employees preferential treatment with respect to days off, absences, tardy arrivals, and the ability to work from home. The Fund has designated certain days as "blackout" days on which employees are not permitted to take off. Aguilar gave a female employee the day off on a "blackout" day but did not permit Thomas to take off on such days. When Thomas asked Aguilar about it, Aguilar told him not to question him because it undermined his authority. Thomas reported this conduct to an internal auditor, who said that she passed his comments along to the board. Nothing was done.

The Fund moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

For purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8 by containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Fund first contends that plaintiff fails to present a legally cognizable claim for relief with respect to his Title VII, ADEA, and IHRA claims (Counts I through VI) because he raises claims that were not included in or reasonably related to his administrative charge and thus administratively exhausted. In the Fund's view, plaintiff's charge is "so vague that it failed to put the Fund on notice of the nature of Plaintiff's claims," so none of his discrimination claims in the instant case can be said to be encompassed by the charge. (ECF No. 22, Def.'s Mem. Supp. Mot. at 3.)

Plaintiff alleges that he "filed a complaint with the . . . EEOC on the basis of age, race, and retaliation and received his Notice of Right to Sue from the EEOC on January 12, 2021." (First Am. Compl. ¶ 71.) Plaintiff did not attach his charge to his complaints, but defendant attached it to the memorandum in support of its motion.[1] The charge reflects that it was filed with the Illinois Department of Human Rights ("IDHR") and cross-filed with the EEOC. (ECF No. 22-1, Charge.) It is dated November 2, 2020 and stamped "Received November 6, 2020."

---

[1] The Court may consider plaintiff's charge on a motion to dismiss because it is central to the complaint and referred to therein. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621-22 (7th Cir. 2020).

3

In the charge, plaintiff checked the boxes for retaliation and discrimination based on race and age,[2] and in the "particulars" box, he stated in full as follows:

> I began my employment with [the Fund] on or about March 9, 2015. My most current position is Senior Accountant. During my employment with [the Fund], I was subjected to different terms and conditions of employment, including but not limited to, not getting raises like other non black employees. I applied for a promotion and I was not selected. I believe I was discriminated [sic] because of my race, black in violation of Title VII of the Civil Rights Act [of] 1964, as amended. I also believe I was discriminated [sic] because of my age, 64, (YOB: 1956), in violation of the Age Discrimination in Employment Act of 1967, as amended.

(*Id.*) Plaintiff entered "10-26-2020" in the boxes marked "earliest" and "latest" "date(s) discrimination took place," and also checked the box "continuing action." (*Id.*)

"In general, a plaintiff can only bring claims under Title VII or the IHRA that he has included in the original [administrative] charge." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). The exhaustion requirement is the same for the ADEA. *Tyburski v. City of Chi.*, 964 F.3d 590, 601 (7th Cir. 2020). This rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). "The only qualification to this principle applies to claims that are 'like or reasonably related' to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges. Those claims may also be brought." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (citation omitted). "To be 'like or reasonably related,' the claims must, at minimum, describe the same conduct and implicate the same individuals." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010); *see also Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1005 (7th Cir. 2019) ("The fact that the charge and complaint generally assert the same kind of discrimination is not sufficient, without some factual relationship between them."). Failure to exhaust, while not a jurisdictional requirement, is a reason for dismissal. *Swearnigen-El*, 602 F.3d at 864; *McQueen v. City of Chi.*, 803 F. Supp. 2d 892, 903 (N.D. Ill. 2011) ("scope of the charge" challenges are appropriate at the dismissal stage). Whether discrimination claims are within the scope of an administrative charge is a question of law. *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). "Courts review the scope of an EEOC charge liberally. Most EEOC charges are . . . drafted by laypersons rather than lawyers, so a Title VII plaintiff need not include in [his] charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Huri v. Off. of the Chief Judge*, 804 F.3d 826, 831 (7th Cir. 2015) (citation omitted). Nonetheless, general allegations of discrimination in an EEOC or IDHR

---

[2] Plaintiff also checked the box for sex discrimination but does not assert such a claim in this action, despite what his factual allegations might suggest.

charge are not a sufficient predicate for bringing any discrimination theory in federal court. *McQueen*, 803 F. Supp. 2d at 902; *Hale v. Bd. of Trs.*, 219 F. Supp. 3d 860, 866 (C.D. Ill. 2016).

First, the Fund argues that Thomas's race- and age-discrimination claims are not encompassed by or reasonably related to his charge because the allegations of the charge were insufficiently specific. The Court agrees. The proper focus is on the conduct described and individuals implicated in each. *Chaidez*, 937 F.3d at 1005. Thomas's charge is nearly as bare bones as it can be; the only conduct he mentions is (1) being subjected to unspecified differing terms and conditions of employment, "including but not limited to" being denied unspecified raises; and (2) being denied an unspecified promotion. The charge is devoid of any factual narrative, and it mentions no individuals whatsoever, not even an unspecified supervisor or co-worker. Thomas provided no dates in his narrative as to the alleged conduct, and in the box marked "date(s) discrimination took place," he entered "10-26-2020," which does not correspond with the times he alleges in the instant complaint that he applied for and was denied promotions (in 2019 and February 2020). Claims of race and age discrimination in an administrative charge and claims of race and age discrimination in a complaint are not alike or reasonably related just because they both assert race and age discrimination; rather, a plaintiff must specifically describe the conduct giving rise to the claims in order to preserve them. *See Cheek*, 31 F.3d at 501-02 ("[T]he requirement of some specificity in an EEOC charge is not a mere technicality.") (internal punctuation omitted); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013). Thomas's broad references to "terms and conditions of employment" and the failure to receive unspecified raises and a promotion were too vague to have put the EEOC or the Fund on notice of his assertions and thus to have preserved the discrimination claims he raises in this action.

Thomas's only responsive argument on this issue is that the proper lens through which to view his charge is one that is solicitous of a Title VII layman plaintiff who initiated the administrative process himself. That principle is undoubtedly correct, but the lenient lens only gets plaintiff so far. "For a court to hold that claims are reasonably related to allegations and grow out of those allegations, the Charge must *make* allegations." *Surgit v. City of Chi.*, No. 19 C 7630, 2021 WL 1192674, at *4 (N.D. Ill. Mar. 29, 2021); *see also Reynolds*, 737 F.3d at 1100 (a charge without "minimally adequate factual specificity" does not preserve a claim). Even an expansive interpretation of Thomas's charge does not permit the Court to supply facts and details that Thomas failed to include. There simply are no factual allegations in the charge to which the Court can reasonably link the current discrimination claims. *See McGoffney v. Vigo Cnty. Div. of Fam. & Child.*, 389 F.3d 750, 752 (7th Cir. 2004) (stating that plaintiff's "vague allegations regarding 'positions' and 'jobs' for which she had applied were insufficient to place the EEOC . . . on notice of the particular job applications to which she was referring"); *Askew v. Waukegan Pub. Sch. Dist. 60*, 767 F. Supp. 2d 923, 931 (N.D. Ill. 2011) (generalized allegations do not provide necessary notice of specific discrimination claims). As noted in *Surgit*, in some instances courts are able to look beyond unclear charges to more detailed written narratives or documentation filed with or attached to a charge. 2021 WL 1192674, at *4. But Thomas points to no such submissions here, and he does not suggest that any facts are missing from the record that would affect the exhaustion defense. Because the Court is unable to say that Thomas's claims for race and age discrimination in Counts I through IV are like or reasonably related to his administrative charge, those claims have not been administratively exhausted and must be

5

dismissed. The dismissal will be without prejudice. *See Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 661 (N.D. Ill. 2020).

The same is true of plaintiff's retaliation claims. Although Thomas checked the box on the charge form for retaliation, that was as far as he went. He failed to mention any instances of retaliation or any facts from which it could even be liberally construed that he was asserting that he had experienced retaliation. Thomas's failure to describe in his charge any conduct suggesting retaliation means that he cannot assert such a claim in this action. *See Nadeem v. Viscosity Oil Co.*, No. 19 C 8253, 2021 WL 4318094, at *7 (N.D. Ill. Sept. 23, 2021) (dismissing retaliation claim for plaintiff's failure to include it in her EEOC charge and noting that plaintiff "did check the retaliation box on the charge form, but that is not enough") (citation omitted); *Mack v. Chi. Transit Auth.*, No. 17 C 6908, 2020 WL 3414952, at *2 (N.D. Ill. June 22, 2020) ("The Court cannot say that [plaintiff's] retaliation claim is reasonably related to or grows out of her disability claim because of the absence of facts supporting those claims."). Accordingly, Thomas's retaliation claims in Counts V and VI will be dismissed without prejudice.

Because the Court is dismissing Thomas's federal claims, it declines to exercise supplemental jurisdiction over his state-law claim in Count VII for violation of the Illinois Whistleblower Act. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). In light of these rulings, the Court need not address the Fund's remaining arguments for dismissal.

Thomas contends that in the event of dismissal, he should be given the opportunity to amend his complaint yet again because the Court "cannot conclude on the present record that amendment would be futile." (ECF No. 26, Pl.'s Resp. Def.'s Mot. at 10.) Thomas does not develop this argument, and the Court does not see it that way. Thomas has already taken advantage of one opportunity to amend. The Fund moved to dismiss plaintiff's original complaint for largely the same reasons it asserts in the instant motion. Plaintiff responded to that motion but two weeks later moved to file an amended complaint "to rectify any issues." (ECF No 18, Pl.'s Mot. Amend at 1.) The Court granted that motion, and plaintiff filed an amended complaint, which defendant again moved to dismiss. The amended complaint sets out more facts than the original, but it misses the boat as to the fundamental problem here (which cannot be cured by further amendments to the complaint): Thomas's administrative charge was skeletal and devoid of essential facts.

## CONCLUSION

Defendant's motion to dismiss the complaint [21] is granted. Counts I through VI are dismissed without prejudice and without leave to replead. The Court declines to exercise supplemental jurisdiction over Count VII and dismisses that claim without prejudice. Civil case terminated.

6

**DATE:** November 22, 2021

**Hon. Ronald A. Guzmán**
**United States District Judge**