**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERT THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-01844 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| | ) | |
| CHICAGO TEACHERS' PENSION FUND, | ) | Magistrate Judge Heather K. McShain |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Chicago Teachers' Pension Fund ("Defendant" or "CTPF"), by it undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 submits this Memorandum of Law in Support of Its Motion for Summary Judgment.

## I.  INTRODUCTION

Plaintiff, Albert Thomas ("Thomas") filed a Third Amended Complaint ("TAC") with six counts: I, Race Discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq.; II, Race Discrimination under the Illinois Human Rights Act 775 ILCS 5 et seq. (the "IHRA"); III, Age Discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §626 (the "ADEA"); IV, Age Discrimination under the IHRA; IV Retaliation under Title VII; and VI, Retaliation under the IHRA. Statement of Material Facts ("SOMF") ¶ 1. Thomas fails to show that his race, age, or alleged protected activity were the "but for" cause as to why he was not promoted and ultimately fired following years of not only increasingly poor performance, but ultimately an outright refusal to perform his assigned work.

1

As detailed below, Thomas has not presented sufficient evidence to establish a dispute of material fact as to any of his six counts. Thomas not only failed to raise any evidence beyond self-serving self-assessments of his work, but he also failed to identify comparators, and he failed to establish a causal nexus for his retaliation claim. Further, Thomas forfeited his Illinois Department of Human Rights ("IDHR") race and age discrimination claims and retaliation claims by failing to provide proof that he exhausted his administrative remedies with the IDHR. Below is a brief factual summary, followed by a discussion of each of Thomas' six counts.

## II.     FACTUAL BACKGROUND

Chicago Teacher's Pension Fund ("CTPF") employed Thomas as a Senior Accountant between 2015 and July 2022. Statement of Material Facts at ¶ 3. Thomas was a member of the Finance Reporting Team, which handled monthly and annual financial reports. *Id.* at ¶ 4. This included establishing and managing a reconciliation process for accounting entries. *Id.* Thomas was responsible for health insurance and benefit payment reconciliation and reporting. *Id.* Between 2017 and 2020, Thomas reported to Manager of Accounting and Reporting Michael Aguilar (Hispanic). *Id.* at ¶8. In 2020, Aguilar departed CTPF for a similar position in California *Id.* at.¶9. In mid-2021, Aguilar returned to CTPF as the Manager of Accounting and Reporting. *Id.* at ¶10. Chief Financial Officer Alise White (African American) was Aguilar's supervisor. *Id.* at ¶11. Executive Director Carlton Lenoir (African American) was White's supervisor. *Id.* at ¶12.

Thomas applied for the Manager of Accounting Operations role twice. *Id.* at ¶¶13 -17. CTPF filled this role with an African American individual both times. *Id.* at ¶¶ 13 – 17. Thomas also twice applied for the role of Manager of Accounting and Reporting (sometimes referred to as Reporting Manager). *Id.* at ¶18. Alise White interviewed Al Thomas for the Manager of Accounting and Reporting position in 2021, but she "saw nothing that rose to the level of what

[she] was looking for in terms of managerial experience with individuals." *Id.* at ¶19. Alise White interviewed Michael Aguilar for the Manager of Accounting and Reporting position in 2021, and she believed that he was qualified for the job because he "[d]emonstrated [his qualifications] through his responses and my familiarity with his experience from the Fund as well as his laying out of the responsibilities that he had with Thousand Oaks and his educational background and experience in the way he presented his self." *Id.* at ¶20.

When interviewing candidates for the Manager of Accounting and Reporting position in 2021, Alise White looked "for a full package in terms of managerial experience." By "managerial experience," White was "talking about mentoring individuals, preparing performance reviews, doing evaluations, doing recommendations in terms of individuals, what training they needed and such." *Id.* at ¶21.

White hired Dan Trevino in April of 2020 to be the Manager of Accounting and Reporting. *Id.* at ¶22. Dan Trevino holds a Bachelor Science in accountancy, a Masters degree, and is a Certified Public Accountant. *Id.* at ¶23. Before joining CTPF, Dan Trevino was the accounting manager for property operations at AMLI Residential for three years. *Id.* at ¶24.

White interviewed Thomas and Aguilar for the position that Aguilar eventually returned to upon Aguilar's return from California. *Id.* at ¶25. Aguilar holds a Bachelor of Science in accountancy and a master's degree. *Id.* at ¶26. Aguilar previously served as CTPF's Manager of Accounting and Reporting from 2017 until he left for California in 2019. *Id.* at ¶27. In California, Aguilar worked as the manager of accounting for the city of Thousand Oaks from 2019 until 2021, and he described it as "almost the exact same role" as his position with the CTPF. *Id.* at ¶28.

Thomas was formally disciplined in July of 2018 for poor work performance. *Id.* at ¶33. Thomas' work performance gradually declined between 2021 and 2022. *Id.* at ¶34. In late 2021,

Thomas began arguing with Aguilar over how to perform bank reconciliations, something Thomas had done without issue for most of the time he worked for CTPF. *Id.* at ¶35. His arguments with Aguilar delayed his work and he did not complete the bank reconciliations according to CTPF's timeline. *Id* at ¶36. In January of 2022, Executive Director Lenoir and White met with Thomas to listen to his concerns. *Id.* at ¶37. Lenoir and White explained to Thomas that he was expected to listen to Aguilar and complete his work assignments as directed by Aguilar and White. *Id.* After this meeting, Thomas continued to argue with Aguilar and failed to timely or accurately complete bank reconciliations *Id.* at ¶38. Accordingly, in February 2022, CTPF placed him on a thirty-day (paid) suspension. *Id.* at ¶39. At the end of his suspension, Thomas applied for and was granted an FMLA leave of absence. *Id.* at ¶40.

On July 9, 2022, Thomas returned to active work with CTPF. *Id.* at ¶41. When he returned, Thomas was again assigned the outstanding health insurance reconciliations. *Id.* at ¶42. Upon his return from FMLA Leave of Absence, Thomas copied White on the emails on his communications with Aguilar. *Id.* at 43. Thomas continued to not complete his work assignments on time. *Id.* at ¶44.

On August 5, 2022, White, in consultation with Lenoir, decided to terminate Thomas' employment due to his insubordination and failure to timely complete assignments. *Id.* at ¶45.

## III.   ARGUMENT

### A.  Counts II, IV, and VI Must be Dismissed Because Thomas Did Not Exhaust His Administrative Remedies Under The IHRA.

There is no genuine dispute that Plaintiff did not receive an order from the Illinois Department of Human Rights ("IDHR") permitting him to pursue his IHRA claims in court. The IHRA requires administrative exhaustion as a prerequisite to filing a civil lawsuit. 775 ILCS 5/7A-102(a). The IHRA prescribes a specific procedure that employees must follow when they file their

4

charges with both the EEOC and the IDHR. The IDHR will not take any action until the EEOC's investigation is complete. 775 ILCS 5/7A-102(A-1)(1). When the EEOC concludes its investigation, the employee must timely notify the IDHR of the EEOC's determination. 775 ILCS 5/7A-102(A-1)(3). Once the IDHR receives the EEOC's determination, the IDHR will notify the parties within 10 business days that it "will adopt the EEOC's determination" unless the employee requests in writing that the IDHR review the EEOC's determination. 775 ILCS 5/7A-102(A-1)(3). If the employee does not make this written request within 35 days, then the IDHR has 10 business days after the 35-day period to notify the employee that it adopts the EEOC's decision, and that the employee has 90 days to sue. *Id*.

The record is devoid of any evidence that Plaintiff exhausted his IHRA claims. The Third Amended Complaint ("TAC") is the current operative pleading in this matter. In it, Plaintiff alleges that he received a right to sue from the EEOC on January 12, 2021 and a second right to sue on April 6, 2023. SOMF at ¶1. There are no allegations in the TAC that Plaintiff received a right to sue letter from the IDHR. Nor has Plaintiff produced a right-to-sue letter at any point. His claims under the IHRA should therefore be dismissed. *See Baranowska v. Intertek Testing Servs. NA, Inc.*, 2020 U.S. Dist. LEXIS 61628, *7-8 (N.D. Ill. Apr. 8, 2020) (Dismissing IHRA claims because plaintiff did not receive a right-to-sue letter from the IDHR).;

The right to sue letter issued by the EEOC will not save Plaintiff's IHRA claims. The EEOC and the IDHR have a workshare agreement where charges are automatically cross-filed between the agencies, but a right-to-sue letter from the EEOC will not act to replace a right-to-sue letter from the IDHR. *See Baranowska*, 2020 U.S. Dist. LEXIS 61628 at *7-8. Plaintiff instead needs an order from the IDHR granting him the right to pursue his claims in court. *See Renfro v. Rotary Int'l*, 2023 U.S. Dist. LEXIS 149088, *8-9 (N.D. Ill. Aug. 24, 2023) (Dismissing IHRA claims

because plaintiff "d[id] not allege that she obtained any notification from IDHR as to her right to commence a civil action."). Accordingly, Counts II, IV and VI of Plaintiff's TAC should be dismissed for failure to exhaust administrative remedies.

### B. Thomas' Claims of Racial Discrimination Under Title VII and the IHRA Fail.

Thomas asserts that CTPF engaged in racial discrimination in violation of Title VII and the Illinois Human Rights Act ("IHRA") when it: (1) failed to promote him to more advanced positions; (2) gave him "different, less preferential terms and conditions of employment"; and (3) suspended and terminated his employment. (SOMF at ¶1, Counts I and II).[1] To survive summary judgment on these claims, Thomas must produce evidence that would allow a reasonable factfinder to conclude that his race caused his termination or some other adverse employment action. *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

The Seventh Circuit has "discarded the distinction between direct and indirect methods of proof in employment discrimination cases and clarified that all evidence must be evaluated as a whole." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (citing *Ortiz*, 834 F.3d at 765–66). However, *Ortiz* does not undermine the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), which sets forth a burden-shifting framework for analysis of discrimination cases Under that standard, Plaintiff must prove that race was the "but for" reason he suffered any adverse employment action. *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010). No matter whether the evidence is evaluated under the *McDonnell Douglas* framework or

---

[1] Because courts analyze claims for racial discrimination under Title VII and the IHRA using the same standards, both of Thomas' racial discrimination claims may be addressed together. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (collecting cases). Even if the IHRA claims survived the administrative exhaustion requirement, they would not survive summary judgment.

evaluated as a whole, Thomas cannot establish that CTPF discriminated against him because of his race.

### 1. CTPF Did Not Discriminate Against Thomas When It Did Not Promote Him.

To demonstrate a *prima facie* case for failure to promote under Title VII, Thomas must produce evidence showing that: (1) he was a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employer promoted someone outside the protected group who was not better qualified for the position that he sought. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). If Thomas establishes a *prima facie* case of discrimination based on a failure to promote, the burden shifts to CTPF to offer a legitimate, non-discriminatory reason for the failure to promote, after which the burden shifts back to Thomas to show that CTPF's reason was pretext for discrimination. *Id.*

Thomas has not established a *prima facie* case that he was denied promotions because of his race or age. Thomas is, of course, a member of the race and age protected classes. And, he was in fact denied three promotions. But he has not adduced any evidence other than his own self-serving statements that he was qualified for the positions he sought, or that persons outside his protected groups who were promoted to those positions were not better qualified for those positions.

Thomas applied to and interviewed for the following positions: (1) Manager of Accounting Operations; and (2) Manager of Reporting. (SOMF ¶¶13, 16, 18). Thomas applied for the Manager of Reporting role twice. (*Id.*, ¶¶ 13, 16). He cannot contest that the Manager of Accounting Operations role was filled by an African American individual. (*Id.*, ¶¶ 14, 17).

Because the Manager of Accounting Operations role was filled by an African American individual, any claim that CTPF discriminated against Thomas because of his race when it did not

hire him for that role necessarily fails. As for the Manager of Reporting role, Thomas' subjective belief that he was better qualified than Aguilar and Trevino does not establish liability. *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007) (plaintiffs who relied on their own subjective beliefs that they were as qualified or more qualified for the promotion failed to establish a *prima facie* case of discrimination). Rather, the record is clear that Aguilar and Trevino had the required relevant educational background and experience and demonstrated this background and experience through their responses in interviews with White, while Thomas did not. (SOMF ¶¶ 19 - 28). Thomas cannot establish that Aguilar and Trevino were not better qualified for this position.

Even if Thomas could establish a *prima facie* case—and he cannot—CTPF had legitimate, non-discriminatory reasons to re-hire Aguilar rather than promote Thomas for the Manager of Reporting role. Aguilar demonstrated during his interviews that he had the "full package" in terms of managerial experience and educational background that the position required. (*Id.*, ¶ 21). Thomas, meanwhile, did not demonstrate the managerial experience required for the position during the interview process. (*Id.*). White, who is African American, chose Aguilar for the Manager of Reporting role based on his breadth of relevant experience, which he demonstrated in his responses during the interview process; on his educational background; and on feedback from other individuals who sat in on the interviews and agreed that Aguilar was the better, more qualified candidate. (*Id.*, ¶ 20).

Thomas cannot prove that CTPF's reasons for not hiring him for the Manager of Reporting role were pretextual. Pretext requires more than showing that the decision was "mistaken, ill-considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Pretext means "the

employer's proffered nondiscriminatory reason is a lie and the real reason is based on discriminatory intent." *Hobbs v. City of Chicago*, 573 F.3d 454, 461-62 (7th Cir. 2009) (collecting cases and affirming summary judgment where plaintiff failed to prove either pretext or discriminatory animus). Thomas has presented no evidence to show that CTPF's decision not to promote him was because of his race. Indeed, that White, an African American individual, was the hiring decisionmaker for the positions Thomas applied for belies any allegation of pretext.

### 2. CTPF Did Not Discriminate Against Thomas Based on his Race When It Suspended or Terminated Him.

As with a claim of discriminatory failure to promote, to establish a *prima facie* case of discriminatory suspension or termination under the *McDonnell-Douglas* framework, Thomas must show: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) at least one similarly situated employee, not in his protected class, was treated more favorably. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). Only if Thomas can establish each of these elements does the burden shift to CTPF "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Thomas cannot establish elements (2) or (4) of the *McDonnell-Douglas* framework.

### a. Thomas Cannot Establish a *Prima Facie* Case of Race Discrimination Because He Repeatedly Failed to Timely and Accurately Complete His Work Assignments and Was Insubordinate.

Thomas cannot establish that he was performing his job satisfactorily, *i.e.,* that he met CTPF's legitimate performance expectations, because he consistently failed to complete his work assignments on time or correctly. Proper and timely completion of work assignments are legitimate expectations of an employer. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 753 (7th Cir. 2006). Thomas was expected to complete health insurance and benefit payment reconciliations in accordance with CTPF's timeline, which had been part of his regular responsibilities over the

course of his eight years of employment with CTPF. (SOMF.at ¶36). In 2021 and 2022, Thomas consistently failed to complete these reconciliations on time or accurately, despite that neither internal accounting timelines nor Thomas' workload had changed. (*Id.*, ¶ 37). Indeed, by 2022, it became clear to CTPF Finance Department leaders, including White, that Thomas was intentionally attempting to delay his work. (*Id.*, ¶ 38). In February 2022, CTPF suspended Thomas (with pay) for his failure to timely or correctly complete his assignments and his insubordinate behavior. (*Id.*, ¶ 41). CTPF informed Thomas that it would terminate his employment if he did not correct these deficiencies upon his return from his suspension. (*Id.*, ¶ at 41). When he returned to work, Thomas persisted in failing to complete his assignments on time or work cooperatively with his manager and colleagues and for that reason, he was fired. (*Id.*, ¶¶ 46, 47). Accordingly, Thomas cannot make out a *prima facie* case of race discrimination and CTPF is entitled to summary judgment on these claims.

> **b. Thomas Cannot Establish a *Prima Facie* Case of Race Discrimination Because He Was Not Treated Less Favorably Than Similarly Situated Employees Outside His Protected Class.**

Thomas cannot establish that he was treated less favorably than other employees outside of his protected class. "An employee is similarly situated if he or she is comparable to the plaintiff in all material respects." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2004). Thomas cannot point to any similarly situated employee outside his protected class—that is, a non-African American or younger Senior Accountant who repeatedly failed to timely or accurately complete their work assignments or was similarly insubordinate—who was not suspended or whose employment was not terminated for similar performance issues. Indeed, there are none.

      **c.**    **CTPF Had a Legitimate, Non-Discriminatory Reason to Suspend and Terminate Thomas' Employment, and Thomas Cannot Establish that This Reason Was Pretextual.**

Even if Thomas could establish a *prima facie* case of race discrimination—which he cannot, as discussed above—the Court should still grant summary judgment to CTPF because it had a legitimate, nondiscriminatory reason to suspend and terminate Thomas' employment, and Thomas cannot establish that this reason was pretextual. Pretext requires more than showing that the decision was "mistaken, ill-considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Anderson v. Chief Legal Counsel*, 334 Ill. App. 3d 630, 634 (2002). As discussed above, CTPF's sole reasons for terminating Thomas' employment were his failure to complete his work assignments on time or accurately and his insubordination. CTPF's reasons for terminating Thomas' employment are well-documented through emails and CTPF leadership's testimony, which demonstrate Thomas' consistent failure to satisfactorily perform his job or work cooperatively with his manager or colleagues. Pretext only exists where evidence shows that the reason given for the termination was untruthful or deceptive. *See Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Thomas has no such evidence.

In addition, Thomas cannot show that the individuals involved in the decision to suspend or terminate him had any animus towards him based on his race. Thomas alleges that Aguilar, who documented the performance deficiencies that led to Thomas' suspension, called him the e n-word during an argument following a departmental meeting they had. (SOMF ¶29). No other Finance Department employees ever heard Aguilar use the n-word and there were no witnesses to the occasion on which Aguilar allegedly called Thomas the n-word. (SOMF ¶¶29, 32). Aguilar flatly

denies that he called Thomas the n-word. (SOMF ¶32), Even assuming Aguilar did, the incident allegedly occurred more than two years before his suspension, and Thomas has provided no evidence that Aguilar held any racial animus toward him or that CTPF considered Thomas' race when it decided to suspend his employment. *See Burrell v. Donahoe*, 2012 U.S. Dist. LEXIS 13016, *20-21 (N.D. Ill. Feb. 2, 2012) (plaintiff's supervisor's alleged use of racial epithet and stray remark was not direct or circumstantial evidence of discrimination because it was not sufficiently connected to the adverse employment decision because the remarks were not made close in time to the adverse employment decision). Moreover, Alise White and Carlton Lenoir—both African American individuals—decided to terminate Thomas' employment, and Thomas did not testify that they made any comments related to his race or held any animus towards him because of his race. (SOMF ¶ 47). Thomas' mere speculation that his race was the cause of his suspension or termination cannot defeat summary judgment. *See, e.g.*, *Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1160 (7th Cir. 2014) (affirming summary judgment for employer where there was no evidence co-worker's dislike of plaintiff was related to her ethnicity).

The record establishes that CTPF terminated Thomas for failing to improve his job performance after his suspension for the same performance deficiencies. *See Thomas v. Norfolk S. Ry. Co.*, 2013 U.S. Dist. LEXIS 29633, *12, (N.D. Ill. Mar. 4, 2013) ("If 'substantial, undisputed information in the record' supports an employer's contention that the employee was violating company policy, that is enough to support a finding that [a] discriminatory reason was not the but-for cause of the termination") (quoting *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010)). For these reasons, the Court should find that Thomas cannot maintain a race discrimination claim against CTPF, and grant CTPF's motion for summary judgment as to those claims.

      **d.**    **Aside From His Suspension and Termination, Thomas Cannot Show He Suffered an Adverse Employment Action Necessary to Establish a *Prima Facie* Case.**

Thomas also cannot support his racial discrimination claim based on any actions taken by CTPF before his suspension or termination because none of these actions constituted an adverse employment action. "Not everything that makes an employee unhappy is an adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). To be actionable, an employment action must bring about "some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024).

      **i.**    **Thomas's Amorphous Claims That He Was Subjected to Different Terms and Conditions of Employment Fail as He Has Failed to Establish They Rise to the Level of An Adverse Employment Action.**

Thomas also asserts that CTPF engaged in racial discrimination in violation of Title VII and the Illinois Human Rights Act ("IHRA") when it gave him "different, less preferential terms and conditions of employment," such as being asked to take notes during meetings, not being permitted to take certain days off, receiving certain training separately from his colleagues, and being subject to increased scrutiny. (SOMF ¶1 at ¶¶ 58 – 67). None of these examples are adverse employment actions because there is no evidence that Thomas was worse off with respect to the terms and conditions of his employment. *See Phillips v Baxter*, 2024 U.S. App. LEXIS 10078 *8 (7th Cir, 2024) *citing*, *Muldrow v. City of St. Louis,* 601 U.S. ___, 144 S.Ct. 967, 2024 WL 1642826at *5 *7 (2024). In *Baxter*, the Seventh Circuit Court of Appeals provided examples of what is not an adverse employment action and found that "an inability to make long-distance phone calls, or access some computer application . . . were mostly temporary inconveniences. None affected the terms and conditions of his employment so as to be an adverse employment action." *Id.* Additional pre-*Muldrow* examples which fit within the post-*Muldrow* framework where there was no change to terms and conditions and thus no adverse action include: *Griffin v. Potter*, 356

F.3d 824, 829 (7th Cir. 2004) (neither change of shift, lengthened commute, unfair discipline, unfavorable evaluation, difficult assignments, refusal to approve annual leave request, nor denial of parking permit constitutes adverse action); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691-92 (7th Cir. 2001) (additional job responsibilities do not qualify as adverse actions). As for the increased scrutiny, the Seventh Circuit has held that negative performance evaluations and oral or written reprimands do not rise to the level of an adverse employment action if they do not implicate tangible job consequences. *Haywood v. Lucent Techs.*, Inc., 323 F.3d 524, 532 (7th Cir. 2003). Accordingly, Thomas cannot establish that he suffered any adverse employment action before his February 2022 suspension or July 2022 termination for poor work performance and insubordination.

### C.  Thomas Cannot Prevail on His Age Discrimination Claims.

Plaintiff pursues age-discrimination claims under both the federal Age Discrimination in Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA") because he was denied promotions in 2019, 2020, and 2021, allegedly due to his age, but these claims should not proceed because he failed to administratively exhaust his state claims, and the candidates ultimately selected were more qualified. To survive summary judgment, Plaintiff must satisfy the framework set forth in *Ortiz* and establish that the evidence—viewed as a whole—would allow a reasonable jury to find that his age was the but-for cause of an allegedly discriminatory employment action. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719-20 (7th Cir. 2018).[2]

Plaintiff couches his age-discrimination claims on the theory that the CTPF denied him promotions and challenges three specific hiring decisions: his July 10, 2019 application for

---

[2] The analytical approach for age discrimination under the ADEA and the IHRA is the same.  *See Gray v. Arrow Elecs, Inc.*, 2019 U.S. Dist. LEXIS 53203, *8 (N.D. Ill. Mar. 28, 2019) ("Seventh Circuit applies the same overall analysis to claims under Title VII, the ADEA, and the IHRA.").

Manager of Accounting Operations, his February 26, 2020 application for Manager of Accounting and Reporting, and his January 21, 2021 application for Manager of Accounting and Reporting. *See* Third Amended Complaint, ECF No. 91, ¶¶ 22, 26, 101. Summary judgment is appropriate for both the ADEA and IHRA claims because: (1) as shown above, Plaintiff did not administratively exhaust his IHRA claims,[3] (2) any claims arising from the 2019 hiring decision have lapsed; and (3) Plaintiff cannot establish a *prima facie* case of age discrimination for the 2020 and 2021 hiring decisions.

### 1. The 2019 Promotion Decision Cannot be Considered.

The Seventh Circuit Court of Appeals has already held that Plaintiff did not exhaust his administrative remedies with respect to the 2019 promotion decision. *See Thomas v. Chi. Teachers' Pension Fund*, 2022 U.S. App. LEXIS 33964, *9 (7th Cir. 2022) ("Thomas also mentions a 2019 failure to promote in his complaint, but that falls outside the 300 days, as Thomas appears to concede."). "[C]laims alleging discrete acts of discrimination must be timely raised during the administrative proceedings for a federal court to consider them." *See Hambrick v. Kijakazi*, 79 F.4th 835, 841 (7th Cir. 2023). As a result, any claims arising from the 2019 promotion decision have lapsed and cannot form the basis for Plaintiff's discrimination claims.

### 2. Plaintiff Was Not Rejected for the 2020 and 2021 Promotions Because of His Age.

Since any claims arising from the promotion decision in 2019 have lapsed, Plaintiff can only base his ADEA and IHRA[4] claims on the 2020 and 2021 promotion decisions. But summary

---

[3] The argument and legal support regarding Plaintiff's failure to administratively exhaust his IHRA claims is addressed above in Section A and for the sake of brevity will not be repeated here.

[4] Although Plaintiff has not administratively exhausted his claims under the IHRA, Defendant addresses their merits because the analysis for discrimination claims arising under the IHRA and ADEA/Title VII are the same. *See Gray*, 2019 U.S. Dist. LEXIS 53203 at *8 ("Seventh Circuit applies the same overall analysis to claims under Title VII, the ADEA, and the IHRA.").

judgment is still appropriate because the candidates ultimately selected for these positions were indisputedly more qualified than Plaintiff. Under the *McDonnell Douglas* framework, Plaintiff cannot establish a *prima facie* case for age discrimination.

In the context of a failure-to-promote claim, an employee establishes a *prima facie* case of age discrimination if (1) he falls within the ADEA's protected class, (2) he was qualified for the position sought, (3) he was rejected for the position, and (4) the position went to someone outside the protected class (or substantially younger) who was not better qualified. *Choy v. Chi. Park Dist.*, 2022 U.S. Dist. LEXIS 53165, *10 (N.D. Ill. Mar. 24, 2022). If Plaintiff marshals sufficient evidence to meet each of these elements, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the failure to promote. *Id*. If Defendant succeeds, then the burden shifts back to Plaintiff to submit evidence that Defendant's explanation is pretextual. *Id*. Plaintiff's claims fail because the undisputed evidence shows that (1) he was less qualified than Trevino and Aguilar for the position, and (2) White had legitimate, nondiscriminatory reasons for her hiring decisions—she honestly believed that Trevino and Aguilar were better suited for the position.

### a. Plaintiff Was Not as Qualified as Trevino and Aguilar.

First, the undisputed evidence shows that Trevino and Aguilar were not similarly situated to Plaintiff because they had better educational backgrounds and more relevant managerial experience. To satisfy the fourth element, Plaintiff must "demonstrate the existence of at least one similarly-situated younger comparator who was promoted," and this comparator must be "directly comparable … in all material respects," including "experience, education, and other qualifications." *Tyburski v. City of Chicago*, 2018 U.S. Dist. LEXIS 140551, *17 (N.D. Ill. Aug. 20, 2018), *aff'd*, 964 F.3d 590, 598 (7th Cir. 2020) (internal quotations omitted). Trevino had a

16

Bachelor of Science in accountancy, a Master's degree, and was a Certified Public Accountant. (SOMF ¶ 23). Before joining the CTPF, he was the accounting manager for property operations at AMLI Residential for three years. (SOMF ¶ 24). Aguilar similarly had a Bachelor of Science in accountancy and a master's degree. (SOMF ¶26). He previously occupied the Manager of Accounting and Reporting position from 2017 until 2019 and worked as the manager of accounting from 2019 until 2021 for the city of Thousand Oaks in California. (SOMF ¶¶ 27, 28); *see Wilson v. Aim Specialty Health*, 2023 U.S. Dist. LEXIS 215017, *29 (N.D. Ill. Dec. 4, 2023) (granting summary judgment and holding that plaintiff's *prima facie* case fails because the candidate ultimately selected had experience in that exact role which "sets them apart."). On the other hand, Plaintiff only had a Bachelor of Science in accountancy and no relevant managerial experience. Accordingly, there is no genuine dispute of material fact that both Trevino and Aguilar were more qualified for the job. *See McCurry v. Kenco Logistics Servs.*, 2018 U.S. Dist. LEXIS 233151, *14 (C.D. Ill. Aug. 14, 2018) (granting summary judgment on failure-to-promote claims because plaintiff did not "establish[] that she was better qualified than Varvel," who "had prior managerial experience.").

### b. White Honestly Believed that Trevino and Aguilar Were More Qualified Applicants.

Second, even if Plaintiff could establish a *prima facie* case for age discrimination—which he cannot—his ADEA and IHRA claims still fail because White, who was 61 years old at the time, had legitimate, nondiscriminatory reasons for selecting Trevino and Aguilar: she believed they were more qualified for a managerial role. "[S]electing someone that [the] employer honestly believes is better qualified for [the] position is [a] legitimate nondiscriminatory reason." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). White testified that when interviewing candidates for the Manager of Accounting and Reporting position, she was looking for someone

who had "a full package in terms of managerial experience," such as a history of "mentoring individuals, preparing performance reviews, doing evaluations, doing recommendations …." (SOMF ¶21). She also believed Aguilar was a better candidate because of his performance history at the CTPF his relevant experience gained through his Thousand Oaks job, and his educational background. (SOMF ¶20). On the other hand, Plaintiff did not have the experience "that rose to the level of what [White] was looking for in terms of managerial experience with individuals." (SOMF ¶19). *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 893-94 (7th Cir. 2016) (affirming summary judgment of ADEA claim because the employer "produced evidence of a nondiscriminatory reason for not hiring Riley: both Adams and Gratsy were more qualified for the position than Riley.").

No evidence indicates that White's reasons for selecting Trevino and Aguilar over Plaintiff were pretextual. To establish pretext, Plaintiff must put forth evidence that White's evaluations of Trevino and Aguilar was "not just faulty reasoning or mistaken judgment, but was a lie, specifically a phony reason." *Choy*, 2022 U.S. Dist. LEXIS 53165 at *13 (granting summary judgment of ADEA claim and finding no evidence of pretext). The record is devoid of any indication that White is lying about her hiring decisions in 2020 and 2021.

For these reasons, the Court should find that Thomas cannot maintain an age claim under the ADEA or the IHRA against CTPF, and grant CTPF's motion for summary judgment as to those claims.

### D. Thomas Cannot Establish Retaliation Under Either Title VII or the IHRA.

In his TAC, Thomas alleges that CTPF retaliated against him in violation of Title VII and the IHRA by: (1) manipulating his work; (2) refusing to promote him; (3) criticizing his work performance; (4) giving him "poor" performance reviews; (5) paying him less than other

employees; and (6) suspending and terminating his employment. (TAC, ¶¶ 120, 129). Each allegation fails.

Both Title VII and the IHRA prohibit retaliation against employees who oppose unlawful employment practices, *Bagwe v. Sedgwick Claims Mgmt. Servs.*, 811 F.3d 866, 887 (7th Cir. 2016), and federal courts use Title VII authority to analyze IHRA claims. *See, e.g.*, *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017). To prevail on a Title VII or IHRA retaliation claim, Thomas must prove: (1) he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 891 (7th Cir. 2024). With regard to a causal link, plaintiffs must show but-for causation. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). This "does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Adebiyi*, 98 F.4th at 892.

To show causation, Thomas "may submit direct or circumstantial evidence to show that [his] employer's action was retaliatory and thus not free from any discrimination." *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022). Relevant circumstantial evidence can include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (citation omitted). This evidence is considered as a whole. *See Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

### 1. Several of Thomas's alleged retaliatory acts are not adverse employment actions.

As stated above, many of Thomas's claimed retaliatory actions are not adverse employment actions. *See Phillips v Baxter* 2024 U.S. App. LEXIS 10078 *8 (7th Cir. 2024)(no adverse action found where there is no evidence that employee was worse off with respect to terms and conditions of employment). Again, "[n]ot everything that makes an employee unhappy is an adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Rather, in the retaliation context, materially adverse actions are those "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911–12 (7th Cir. 2022). Such actions must rise above "trivial harms," such as "petty slights or minor annoyances that often take place at work and that all employees experience," that are not materially adverse. *Id.* at 912.

Plaintiff's claimed retaliatory acts of CPTF "manipulating [his] work," "criticizing [his] work performance," and "giving [him] 'poor' performance reviews," miss the mark. Each of these categories falls in the sphere of a negative performance review. The Seventh Circuit has unambiguously held that without tangible job consequences such actions are not materially adverse actions that can support a retaliation claim. *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("Unfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice…."). Thomas fails to allege, and cannot show, any tangible consequences stemming from any of these actions, and thus they cannot form the basis for a retaliation claim[5].

---

[5] Nor does Thomas plead or identify with specificity when any of these three alleged actions occurred. If they occurred before any protected activity, they logically cannot form the basis for a retaliation claim.

### 2. Thomas cannot establish causation between any protected conduct and any adverse action.

Thomas cannot present evidence to establish that CTPF took any action against him because of any protected activity. To carry his burden, Thomas must offer evidence to show that a retaliatory motive was a "but-for cause of the challenged employment action." *Gracia v. SigmaTron International, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016), quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. Plaintiff cannot show any direct evidence of discrimination, and thus must rely on circumstantial evidence alone. *See, e.g.*, *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024).

### a. CTPF's decisions not to promote Thomas were not retaliatory.

Thomas has not specified what promotions CTPF did not award him as retaliation for his protected activity, but, regardless, cannot show any retaliatory failure to promote. First, Thomas's first alleged instance of protected activity was his November 6, 2020 EEOC Charge. (SOMF ¶16). CTPF could not have retaliated against Thomas before that date, as there was nothing to retaliate against. Thus, any claim relating to his Summer 2019 application to the Manager of Accounting Operations position fails.

### b. Likewise, Thomas's claim that he should have been promoted to the Manager of Accounting Operations over David Sevier fails.

The only evidence Thomas points to in support of his allegation is that he filed his November 2020 EEOC charge—nothing else. (SOMF ¶ 16).([Thomas Dep. 337:13–18]). Thomas's mere speculation cannot carry his burden to prove retaliation. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir.2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce

facts which somehow tie the adverse decision to the plaintiffs' protected actions."). Sevier, African-American, became Manager of Accounting sometime after Aguilar left to work in California in late 2019. SOMF ¶ 16.

Finally, Thomas's allegation relating to the Manager of Reporting filled by Michael Aguilar in 2021 also fails. Once again, Thomas points to the mere existence of his EEOC charges to support his contention of retaliatory animus. This is not enough. What's more, as described above, Aguilar was more qualified for the position than Thomas.

### c. Thomas cannot show any difference in pay was retaliatory.

Thomas cannot carry his burden to show any similarly situated employee was paid more than him, or that any pay difference was retaliatory. To show a valid inequal pay case, Thomas must show he was paid less than some another employee similarly situated in all material respects. *Nuzzi v. Bourbonnais Elem. Sch. Dist.*, 360 F. App'x 664, 667 (7th Cir. 2010). Besides the conclusory accusation in his Complaint, Thomas does not allege any retaliatory basis for any difference in pay, and, quite the contrary, ties this to his race and age rather than termination. (*See* TAC ¶¶ 37–38). Without that evidence, this claim too fails.

### d. CTPF's suspension and termination of Thomas's employment was not retaliatory.

Thomas's remaining bases of retaliation, the suspension and ultimate termination of his employment by CTPF, fare no better than his other allegations. CTPF suspended Thomas's employment on February 10, 2022 because of his poor performance. (SOMF ¶41). This suspension came 15 months after Thomas filed his initial, November 2020 EEOC Charge, ten months after his federal complaint. (SOMF ¶¶16,1). The suspension is simply too temporally attenuated to be linked to Thomas's Charge, or his federal lawsuit. *See*, *e.g.*, *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390 (7th Cir. 1999) (four months negates causal inference); *Davidson v. Midelfort*

*Clinic,* 133 F.3d 499 (7th Cir. 1998) (no causal inference where employee was terminated five months after filing EEOC complaint, even though complaint was still pending); *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003 (7th Cir. 2000) (no causal inference after a year).

Though a significant time interval is not conclusive proof that retaliation did not occur, it weakens any inference for Thomas, and requires him to put forward other evidence to support his claim. *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014). He cannot do this. As discussed above, CPTF suspended, and ultimately terminated, Thomas's employment because of ongoing and unfading performance deficiencies—nothing else. Thomas would like this Court to believe that CTPF's critiques of his performance started only after he filed his first EEOC Charge, but this is not so. Rather, CPTF formally disciplined Thomas for these same issues in July of 2018, <u>more than two years</u> before his first EEOC Charge. SMOF at ¶33. This warning unambiguously stated that he "[had] not displayed the professional competencies expected of a Senior Accountant," and noted he had "displayed a lack of initiative with regard to … timeliness," as well as that he "responded with negative, hostile, and insubordinate communication in front of team members and in private meetings." (*Id.*). That CTPF issued a warning to Thomas for near-identical conduct <u>years</u> before even his first EEOC charge is demonstrative that his later discipline and termination were not retaliatory. *See Hall v. Ill. Bell Tel. Co.*, 598 F. App'x 446, 448 (7th Cir. 2015) ("When an employee is disciplined for the same violation before filing a charge of discrimination, this discipline undermines the reasonableness of any inference that the charge triggered any later discipline." (quote omitted)). CTPF's reasoning has been consistent since 2018—Thomas consistently failed to meet its legitimate performance expectations without improvement, and that is the sole reason for the suspension and termination of his employment.

### 3. Thomas cannot show CPTF's reasons are pretextual.

As stated above, Thomas's speculation about what he believes CTPF's true motives are insufficient to survive summary judgment. *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("speculation is not evidence" to avoid summary judgment). Rather, Thomas must show CTPF's stated reasoning is pretextual—a lie to cover discrimination. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). The question for this Court "is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge," or even if CTPF "may be wrong about [Thomas's] performance," or if it is being "too hard" on him. *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013) (quotation omitted). "Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.* (quotation omitted).

At best, Thomas can subjectively disagree with CTPF's perception of his performance. But that isn't enough. Thomas "merely denying" CTPF's allegations is insufficient to survive summary judgment. *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). "An employer may hire or refuse to hire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for discriminatory reason." *Malacara v. City of Madison*, 224 F.3d 727, 731 (7th Cir. 2000). Thomas provides no evidence that CTPF did not genuinely believe that his poor performance warranted his suspension or termination, or that either action (or any action alleged, for that matter) would not have occurred but-for his protected activity. See *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (retaliation cases require proof of but-for causation). For that reason, his retaliation claims fail in their entirety and must be dismissed.

24

IV.     <u>**CONCLUSION**</u>

After four years of litigation, an appeal to the Seventh Circuit, over twenty depositions, and CTPF's production of tens of thousands of documents, Thomas failed to identify any issue of material fact and CTPF is entitled to judgment as a matter of law on all six counts of Thomas' Third Amended Complaint.

Dated: August  14, 2024                                  Respectfully submitted,

                                                                      **CHICAGO TEACHERS' PENSION FUND**

                                                                      By: <u>/s/</u> *Gregory H. Andrews*
                                                                              One of Its Attorneys

Gregory H. Andrews
Daniel T. Corbett
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601
Telephone: (312) 787-4949
Gregory.andrews@jacksonlewis.com
Daniel.corbett@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

I, Gregory H. Andrews, an attorney, certify that on August 14, 2024, I caused to be electronically filed a copy of the foregoing ***Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Gregory H. Andrews*