UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALBERT THOMAS,
    PLAINTIFF,

v.　　　　　　　　　　　　　　　　　Case No.: 1:21−Cv−01844
　　　　　　　　　　　　　　　　　　Honorable Sharon Johnson Coleman

CHICAGO TEACHERS' PENSION　　　　　Magistrate Judge Heather K. McShain
FUND,
    DEFENDANT.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Albert Thomas, by and through his attorneys, Carla D. Aikens, P.L.C., and for his Response to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment, states as follows:

**INTRODUCTION**

Defendant requests a full and complete dismissal of Mr. Thomas' claims in its motion. It argues that: 1) Plaintiff's IHRA claims did not have the administrative remedies properly exhausted; 2) Plaintiff cannot support a racial discrimination claim; 3) Plaintiff cannot support an age discrimination claim; and 4) Plaintiff cannot support a retaliation claim. Defendant fails to consider any of the evidence presented in the testimony related to these issues, the documents

1

provided, and the testimony of Mr. Thomas, who worked for Defendant for over seven year until he was terminated after he filed a lawsuit against Defendant.

As detailed in the subsequent sections, Plaintiff was subjected to numerous adverse actions, including heightened scrutiny; racially insensitive language; suspension; failure to promote; increased workload; and eventually, termination. These actions, coupled with other evidence presented to this Honorable Court would allow a reasonable juror to support Plaintiff's claims, when viewed in a light most favorable to him as the non-moving party.

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS

In addition to the responses to Defendant's factual assertions, Plaintiff presents additional facts, as stated herein.

Noticeably absent from Defendant's factual assertions and motion, is any reference to the deposition of Adriane McCoy, Defendant's former internal auditor. [Plaintiff's Exhibit 5 – Deposition Transcript of Adriane McCoy at 6:4-8, 9:1-18]. McCoy herself experienced racial and gender discrimination during her time with Defendant. *Id.* at 138:8-139:18. McCoy was aware of (and thus Defendant also possessed) numerous complaints about failure to promote African American employees, denying salary increases, and terminations. *Id.* at 104:10-105:22. McCoy not only stated complaints were made but also unequivocally

stated "I observed [African-American employees] not being promoted." *Id.* at 104:14-17.

Further, Phyllis L. Mallet, a Senior Operations Accountant working for Defendant, offered support to Mr. Thomas' claims during her deposition. [Plaintiff's Exhibit 6 – Deposition Transcript of Phyllis L. Mallet at 17:21-19:25]. Both Catrina Cannon and Daniel Trevino were younger and less qualified than Mr. Thomas. *Id.* Mr. Thomas had years of experience with the firm and he was a "no-brainer" when it came to potential candidates for these positions. *Id.* Mr. Thomas even had to train Daniel Trevino on the position for which Mr. Thomas' application was rejected. *Id.* at 25:12-26:1.[1] She continued to explain that Mr. Thomas had more accounting knowledge. *Id.* at 43:6-14. Despite this fact, Mr. Thomas and other Black employees of Defendant were required to take skills assessments where Caucasian applicants were not expected to adhere to the same requirements. *Id.* at 35:1-15.

Aguilar would further get into tense arguments with Mr. Thomas on a regular basis. *Id.* at 30:15-25. These heated discussions would be targeted towards Mr. Thomas, subjecting him to a higher level of micromanagement. *Id.* at 39:5-40-7. Adding to the burden Mr. Thomas felt upon Aguilar's return, Aguilar expected

---

[1] Ms. Mallet explained later that Black employees outside the finance department felt the discriminatory promotion practices and complained to Defendant about these issues. [Plaintiff's Exhibit 6 at 52:17-53:10].

more of Mr. Thomas without increasing his title to that of a supervisor. *Id*. at 46:20-48:3. Ms. Mallet further confirmed her own suspicions about HR's investment in solving the complaints of minorities who worked for the Defendant. *Id*. at 62:1-24.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material'" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

## ARGUMENT

### A. Plaintiff's IHRA Claims.

Defendant argues that Plaintiff failed to exhaust his administrative remedies for his IHRA claims. However, the documents attached to this Response as Plaintiff's Exhibit 7 show that the IDHR did not need to take any further action. The IDHR received a charge from Mr. Thomas evidencing issues he placed before the EEOC. The IDHR issued a letter to Mr. Thomas specifically stating he only needed to submit the EEOC findings if he wanted the EEOC to take further action on his charge. *Id*. The 30-day requirement applied only if the letter were received prior to the EEOC's findings, but Defendant provided no information that this was the case. Rather, it focused solely on the statutory requirements despite the IDHR's letter clearly allowing Mr. Thomas' claims to move forward without further IDHR action, due to the work-sharing agreement between the IDHR and EEOC.

The submission of the charge, the receipt of the letter, and the workshare evidence from the IDHR show Plaintiff's compliance with the IDHR's expectations for his state law claims. The IDHR had notice of the EEOC's determination under 775 ILCS 5/7A-102(A-1)(3), meaning that the IDHR's adoption of the EEOC determination satisfies the statutory requirements for administrative exhaustion. Plaintiff does not need to rely on the EEOC Right to

5

Sue Letter, because the communication from the IDHR itself allowed Plaintiff to proceed forward with his claims. [Plaintiff's Exhibit 7].

## B. Plaintiff's Racial Discrimination Claims are Supported.

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) the plaintiff must first demonstrate a prima facie case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. The applicable standard at summary judgment is whether the evidence would permit a reasonable factfinder to conclude that racial discrimination caused the adverse employment action—here, the failure to promote. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

### 1. Failure to Promote

To demonstrate a *prima facie* case for failure to promote under Title VII, Thomas must produce evidence showing that: (1) he was a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employer promoted someone outside the protected group who was not better qualified for the position that he sought. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). If a *prima facie* case of discrimination based on a failure to promote is established, the burden shifts to Defendant to offer a legitimate, non-

6

discriminatory reason for the failure to promote, after which the burden shifts back to Thomas to show that Defendant's reason was pretext for discrimination. *Id*.

There is no dispute that Mr. Thomas meets elements one and three, leaving only elements two and four. Defendant's Memorandum states that Mr. Thomas "has not adduced any evidence other than his own self-serving statements that he was qualified for the positions he sought, or that persons outside his protected groups were promoted to those positions were not better qualified for those positions." [Doc. 127-1 at PageID #:728]. Defendant neglected to inform the Court of the deposition of Phyllis Mallet, a fellow accountant, who testified affirmatively that Mr. Thomas was more qualified than both Catrinna Cannon and Daniel Trevino. [Plaintiff's Exhibit 6 at 17:19-19:25]. Her testimony alone calls into question the entire narrative of the Defendant and would allow a jury the possibility to find Mr. Thomas was in fact more qualified. Defendant failed to mention this testimony during its Motion in an attempt to paint an improper picture of the Plaintiff's case after discovery.

Aguilar, who was over Plaintiff, on the other hand, had no relevant experience in accounting when he was hired besides filing tax returns for one entity that was not a pension fund and having done a bookkeeping internship for a semester in college at a small photography firm, as he had been a branch manager at a bank just before his hire at CTPF and he held a bachelor's degree in

7

accounting. [Doc. 130-5, 13:2-14; 13:18-14:10; 16:6-17:1]. Plaintiff, in contrast, had over 25 years of experience in the role that Aguilar received. [Doc. 130-4, 205:25-206:1]. Defendant cannot dispute that Plaintiff had more experience than Aguilar. [Doc. 130-4, 100:3-15; 299:21-23]. In contrast, Alise White interviewed Thomas for the several of the roles and ignored the CFO experience on his resume, which is the same position Alise White held at the times relevant to Thomas' applications. [Doc. 130:8, Defendant's Exhibit F at 90:8-22]. Despite that experience on his resume, Alise White stated his CFO experience was not enough for a position under her as the CFO's purview. *Id*. Ms. Mallet even stated Mr. Thomas possessed more accounting knowledge than Aguilar. [Plaintiff's Exhibit 6 at 43:6-14]. This additional knowledge would have been apparent to Ms. White and Defendant's other agents had Aguilar taken the same assessment Mr. Thomas and other Black employees were required to take. *Id*. at 35:1-15. Ms. White further testified that she would not have the ability to refute someone from the finance department calling Mr. Thomas the "go-to guy" for reconciliations. [Defendant's Exhibit F at 91:23-92:3]. Thus, Plaintiff has at least presented a question of fact as to whether he was more qualified than Aguilar.

Defendant even tried to present that Aguilar had a master's degree at the times relevant to his rehire at the Fund. [*See* Plaintiff's Fact #26]. In fact, there is no independent evidence to confirm Aguilar's California job involved any of the

8

Case: 1:21-cv-01844 Document #: 137 Filed: 10/07/24 Page 9 of 20 PageID #:1052

same tasks, while Mr. Thomas continually performed his same accountant role and gained more relevant experience during Aguilar's absence. [*See* Plaintiff's Facts #27-28]. Aguilar's educational background was the same as Mr. Thomas' at the time of the rehire, not superior. This, along with the cavalier dismissal of Mr. Thomas' experience in CFO roles, would allow a jury to conclude the failure to promote Mr. Thomas in these numerous roles could only be based on an improper consideration such as his race, and that Defendant's reasons for its adverse actions were purely pretextual. As such, summary judgment would be improper on these claims.

### 2. Mr. Thomas had adverse actions taken against him based upon his race

For Mr. Thomas to demonstrate a prima facie case, he must demonstrate "(1) [he] is a member of a protected class, (2) [his] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *LaRiviere v. Board of Trustees*, 926 F.3d 356, 360 (7th Cir. 2019) (quoting, *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017)). Defendant only contests elements two and four.

> *i. Thomas' alleged performance issues are not accurately presented by Defendant*

9

Defendant once again fails to present the full picture to this Honorable Court. Numerous team members experienced delays on their reconciliation projects, meaning that this would not have been an uncommon occurrence within the department. [*See* Plaintiff's Fact #36]. Mr. Thomas was requested by Aguilar to assist or train other individuals while also completing his own reconciliations. *Id*. [*see also* Plaintiff's Facts #33-37; Plaintiff's Exhibit 6 at 25:12-26:1, 46:20-48:3]. Defendant attempts to use Mr. Thomas' qualifications as a positive by assigning him additional responsibilities; while simultaneously stating he was not qualified for promotions and unable to perform tasks he completed successfully for many years.

Further, Defendant claims that Aguilar worked double time for nearly five months to ensure that Mr. Thomas' reconciliation proceeded according to plan. However, no timecards were provided by Defendant to support such a claim, nor is it a far logical leap to state that the quality of work for all employees decreases the longer they work in a given week. Even if Aguilar was indeed working the hours Defendant claims, nothing in the motion presented to this Honorable Court establishes the work was correct, accurate, or sufficient during Mr. Thomas' medical leave. It is Defendant's motion and it must present evidence to establish the facts it claims, but has not done so on this crucial fact. Defendant's own internal auditor experienced discrimination attributable to her race as well as received

complaints regarding other Black employees. [Plaintiff's Exhibit 5 – Deposition Transcript of Adriane McCoy at 6:4-8, 9:1-18,104:10-105:22].

A reasonable juror, taking into account the additional work Mr. Thomas did, the clear belief by Ms. Mallet that additional work was expected of Mr. Thomas, and the lack of documentation about Aguilar's performance on Mr. Thomas' reconciliation, could determine the performance issues were purely pretextual.

### ii. *Thomas was treated less favorably than similarly situated employees*

Alise White affirmatively stated in her deposition that delays on the reconciliation projects would not have been an uncommon occurrence within the department. [*See* Plaintiff's Fact #36]. This means that other accountants had the same issues as Mr. Thomas and were not treated in a similar fashion to Mr. Thomas.

### iii. *Multiple adverse actions occurred*

Defendant fails to address the following adverse actions in its motion:

- The Skills Assessment Mr. Thomas and other Black employees were required to take;
- The heightened expectations;
- The heightened micromanagement by Aguilar; and
- The hostility and heated discussions from Aguilar.

11

Each of these adverse actions are supported by non-interested party testimony, meaning that at the bare minimum, there is a basis for a jury to find in favor of Mr. Thomas on his claims. [2] These actions would meet the standard recently set forth in *Muldrow v. City of St Louis*, 601 U.S. \_\_\_\_\_, 144 S.Ct. 967 where the Supreme Court held:

> What the transferee does not have to show, according to the relevant text, is that the harm incurred was "significant." 30 F. 4th, at 688. Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. See supra, at 4, and 4–5, n. 1. "Discriminate against" means treat worse, here based on sex. *See, e.g., Bostock*, 590 U. S., at 657–658, 681. But neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish, as the courts below did, between transfers causing significant disadvantages and transfers causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand "significance" is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written.

The Court continued:

> The anti-discrimination provision, we explained, simply "seeks a workplace where individuals are not discriminated against" because of traits like race and sex. *Id.*, at 63. The provision thus flatly "prevent[s] injury to individuals based on" status, ibid., without distinguishing between significant and less significant harms.

The *Muldrow* holding supports Mr. Thomas' claims, because each of the listed adverse actions imposed some harm on to Mr. Thomas. At this stage of the

---

[2] Credibility determinations are not made at the summary judgment stage. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

12

proceedings, the significance of the harm is irrelevant to the determination of discrimination, and Defendant's attempts to represent *Muldrow* as supporting such a ruling are improper. With the focus *Muldrow* provides, all of Mr. Thomas' claimed actions such as increased scrutiny, changes to responsibilities, heated discussions on responsibilities with Aguilar, suspension, and eventual termination would all be satisfactory adverse actions.

### C. **Thomas' Age Discrimination Claims are Supported.**

The Seventh Circuit has held that any distinction between direct and indirect methods of proof in employment discrimination cases is not to be used to "complicate and sidetrack[] employment discrimination" cases, and it emphasized that all evidence must be evaluated as a whole to answer one question: "whether a reasonable juror could conclude that [plaintiff] would have kept his job" if he were not a member of his protected class. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763–64 (7th Cir. 2016). Thus, the proper inquiry before this Honorable Court is whether a reasonable jury could determine, based on all of the record evidence, that Mr. Thomas' age was the cause of his termination or other such adverse actions as set forth in the preceding sections. *Id.*; *see David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (noting that after *Ortiz*, "the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?").

13

As noted above, there exists quite clearly a genuine issue of material fact sufficient to allow a juror to determine Mr. Thomas was qualified for the positions for which he applied. Plaintiff fully addresses the qualifications issue in Section B of this Response and reasserts and restates the arguments contained therein.

Further, Phyillis Mallet testified both Catrina Cannon and Daniel Trevino were younger and less qualified than Mr. Thomas. [Plaintiff's Exhibit 6 at 17:21-19:25]. Mr. Thomas had years of experience with the firm and he was a "no-brainer" when it came to potential candidates for these positions. *Id*. Mr. Thomas even had to train Daniel Trevino on the position Mr. Thomas' application was rejected. *Id*. at 25:12-26:1.[3]

Alise White interviewed Thomas for the several of the roles and ignored the CFO experience on his resume, which is the same position Alise White held at the times relevant to Thomas' applications. [Defendant's Exhibit F at 90:8-22]. Despite that experience on his resume, Alise White stated his CFO experience was not enough for a position under her as the CFO's purview. *Id*. Ms. White further testified that she would not have the ability to refute someone from the finance

---

[3] Ms. Mallet explained later that Black employees outside the finance department felt the discriminatory promotion practices and complained to Defendant about these issues. [Plaintiff's Exhibit 6 at 52:17-53:10].

14

department calling Mr. Thomas the "go-to guy" for reconciliations. [Defendant's Exhibit F at 91:23-92:3].

As stated above with respect to his racial discrimination claim, the differences between Aguilar and Mr. Thomas, along with the cavalier dismissal of Mr. Thomas' experience in CFO roles, could allow a jury to conclude the failure to promote Mr. Thomas in these numerous roles could be based on an improper consideration such as his age. As such, summary judgment would be improper on these claims.

Cannon, Trevino, and Aguilar are all substantially younger than Mr. Thomas which is an undisputed fact. This age difference, coupled with the clear attempt to use Mr. Thomas' experience as a positive and negative as it suits Defendant[4] would allow a reasonable juror to infer Mr. Thomas' superior accounting ability and experience as a CFO made him more qualified than Cannon, Trevino and Aguilar.

Given all of this information and the testimony of Phyllis Mallet, it was a façade by White to claim that any of the three listed individuals were more qualified than Mr. Thomas when it came to relevant knowledge and managerial experience.

**D. Thomas' Retaliation Claims are Supported.**

---

[4] This is explained in Section(B)(ii)(1).

To survive summary judgment on his retaliation claim, Mr. Thomas must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 693 (7th Cir. 2014) (citation omitted). Defendant does not deny (nor could it credibly do so) that Mr. Thomas engaged in numerous protected activities, and as such the first element illustrated by the *Hutt* Court is not in dispute.

### 1. Adverse actions

Plaintiff directs this Honorable Court to Section B(2) for the discussion on adverse actions taken against Plaintiff in this instant matter. Mr. Thomas had his workload increased, hostility levels with supervisors increased, experienced abusive language, and even had to take skills assessments after his reporting of behavior to HR, Adriane McCoy, and the EEOC. In fact, Lateef Mood and Tashema Haynes confirm HR failed to act often leaving those experiencing discrimination or retaliation powerless. [Plaintiff's Exhibit 1 at 21:11-25; Plaintiff's Exhibit 2: Deposition of Lateef Moody at 28:19-30:13].[5]

Adriane McCoy even expressed concern about Mr. Thomas' treatment after coming to her with whistleblower concerns. [Plaintiff's Exhibit 5 at 84:17-85:11].

---

[5] Moody testified to feeling powerless and that it felt pointless to report anything to HR.

This would coincide with the treatment Ms. McCoy experienced bringing up concerns and receiving hostility and/or retaliation in her day-to-day job. *Id*. at 86:16-88:17. The hostility she experienced after reporting these serious concerns was one of the reasons she left Defendant's employ. *Id*. Moreover, Plaintiff was suspended and then fired while his lawsuit was pending. Thus, a reasonable fact finder could conclude that Defendant retaliated against Mr. Thomas for his complaints of racial and age discrimination, and for bringing several serious accounting shortcomings to Defendant's attention. This would mirror the experiences of people like Phyillis Mallet, Adriane McCoy, Lateef Moody, and Tashema Haynes – all Black employees of Defendant.

### 2. Causal connection

Defendant fails to address any of the whistleblower complaints Mr. Thomas brought as well as complaints to Ms. White and Adriane McCoy. [Plaintiff's Exhibit 5 at 84:17-85:11; Defendant's Exhibit F at 24-27]. To claim that only the EEOC charge and nothing else qualifies as protected activity is unsupported by any of the law Defendant cites in its memorandum. As set forth in the preceding sections, numerous adverse actions occurred that were both repetitive and taken during the time Mr. Thomas brought whistleblower complaints to McCoy who was concerned about the behavior towards Mr. Thomas, evidencing a potential leak in confidentiality. [Plaintiff's Exhibit 5 at 84:17-85:11].

17

The mistreatment Mr. Thomas received was repetitive and pervasive, making any argument that the actions were "too attenuated" unsupported by the undisputed fact that he was suspended in February 2022 after reporting to Ms. McCoy on January 12, 2022 "egregious and ongoing acts of retaliation, discrimination and harassment by…Aguilar." [Doc. 130-4, 214:4-14, 225:1-4]. Suspicious timing can certainly support a claim of retaliation. *See Igasaki v. Illinois Dep't of Financial and Professional Regulation*, 988 F.3d 948, 959 (7th Cir. 2021). This claim of attenuation also ignores the testimony of individuals such as Ms. McCoy and Ms. Mallet. When looking at the totality of the treatment Mr. Thomas received, and the massive implications of allegations in his state false claims action, a reasonable juror could easily find Defendant's actions retaliatory as a means to silence others from reporting misconduct. Ms. McCoy – whose job it was to bring up this conduct – even experienced retaliation for doing her job and bringing up concerns related to the treatment of individuals and the potential whistleblower actions. [Plaintiff's Exhibit 5 at 84:17-85:11, 86:16-88:17]. The hostility she experienced after reporting these serious concerns was one of the reasons she left Defendant's employ. *Id*. Defendant cannot possibly believe it is entitled to summary judgment in light of the undisputed evidence to support his retaliation claim.

### 3. Pretext

Plaintiff has addressed the weak position of Defendant as it relates to Mr. Thomas' performance in the preceding sections, and incorporates his prior argument on pretext in Section B as to his racial discrimination claims. Plaintiff's performance was fine until he began to complain about discrimination, retaliation and harassment on the part of Aguilar. It was not until he submitted a direct complaint to Ms. McCoy that he was suspended shortly thereafter, for the first time in his career, by the same individual about whom he complained. Defendant has no evidence that it ever even bothered to investigate any of Mr. Thomas' complaints, and it never even interviewed him. [Doc. 130-4, 326:5-327:5]. Plaintiff submits that no one else has even been suspended besides himself. [*Id.* at 327:6-8]. Defendant confiscated Plaintiff's laptop when he was suspended – an act only done to terminated employees [*Id.* at 324:25-325:11]. And he was so good at his job that he – not Aguilar – was asked to check the numbers of others, which was not even a part of his job. [*Id.* at 325:17-326:4; Doc. 130-8, 19:12-20:23]. It was obviously a foregone conclusion that he was never returning at the point that he had been suspended. Accordingly, a reasonable juror conclude that Defendant's basis for terminating him was pretextual.

## CONCLUSION

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendant's Motion in its entirety and grant such other relief as deemed necessary and appropriate.

Dated: October 7, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Carla D. Aikens*

　　　　　　　　　　　　　　　　　　Carla D. Aikens
　　　　　　　　　　　　　　　　　　Carla D. Aikens, P.L.C.
　　　　　　　　　　　　　　　　　　615 Griswold Street
　　　　　　　　　　　　　　　　　　Suite 709
　　　　　　　　　　　　　　　　　　Detroit, MI 48226
　　　　　　　　　　　　　　　　　　Email: carla@aikenslawfirm.com

## PROOF OF SERVICE

On the date below, the undersigned certifies that a copy of the foregoing instrument was served upon all interested parties in the captioned matter via the Court's e-service system at the email addresses provided by said parties to the Court.

Dated: October 7, 2024

　　　　　　　　　　　　　　　　　　/s/ Katarzyna Nowicki