IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERT THOMAS, ) | |
| ) | |
|     Plaintiff, ) | Case No. 21-cv-01844 |
| ) | |
| v. ) | Honorable Sharon Johnson Coleman |
| ) | |
| ) | |
| CHICAGO TEACHERS' PENSION FUND, ) | Magistrate Judge Heather K. McShain |
| ) | |
|     Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Chicago Teachers' Pension Fund ("CTPF"), by its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits this Reply Memorandum of Law in Support of Its Motion for Summary Judgment.

**A. Thomas' Responses to CTPF's Rule 56 and Local Rule 56.1(a) Statement of Facts Should be Stricken for Failure to Comply with Local Rule 56.1(b) and this Court's Standing Order.**

On October 7, 2024, Plaintiff Albert Thomas ("Thomas") filed: Plaintiff's Response to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Docket ("Dkt.") 137); (2) Plaintiff's Response to Defendant's Motion for Summary Judgment, which is essentially styled as an answer to Defendant's Motion for Summary judgment (Dkt. 138); and (3) another document with the same name as Dkt. 138, Plaintiff's Response to Defendant's Motion for Summary Judgment, which purports to be a Rule 56.1 response. (Dkt. 139)(collectively, "Thomas' Responses").

Contrary to Local Rule 56.1 and this Court's Standing Order on Summary Judgment Motions, Thomas did not file a separate Rule 56.1(b) Statement of Additional Facts. Instead, Dkt. 137 includes roughly two pages of mixed facts and argument about Phyllis Mallet's irrelevant

1

observations under the heading "Thomas' Additional Material Facts" (Dkt. 137 at pp. 2-4) and violates Local Rule 56.1(b)(3)(A) and (C). Dkt. 137 also violates this Court's Standing Order on Summary Judgment which states that the responses to undisputed material facts "shall be filed separately from the memoranda of law." The "Additional Material Facts" fail to create a genuine issue of material fact because they are based on beliefs, speculation, and a lack of personal knowledge. *See McMillian v Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989). The additional facts should be stricken. *See Buttron v. Sheehan*, 2003 WL 21801222 (N.D. Ill. Aug. 4, 2003).

Thomas' response to CTPF's statement of material facts (erroneously styled as "Response to Motion for Summary Judgment" (Dkt. 139)) violates Local Rule 56.1(b)(3)(A)-(C) and this Court's Standing Order on Summary Judgment in five ways referenced in *Buttron*. First, paragraphs 31, 34, 36, 37, 38, 39, and 47 contain no citation to opposing evidence. Second, paragraphs 9, 13, 14, 16, 17, 21, 25, 26, 28, 31, 32, 33, 34, 36-40, and 46 include additional information in their responses. Third, paragraphs 9, 13, and 14 state Thomas lacks sufficient information to admit or deny. *See Weeks v. Warden*, 2017 U.S. Dist. LEXIS 125344, n. 3 (N.D. Ill. Aug. 7, 2017) ("Plaintiff states that he has 'insufficient knowledge to admit or deny.' This is not a proper way to respond at the summary judgment stage."). Fourth, paragraphs 13, 14, 21, 25, 26, 32, 34, 36-40, 46, and 47 mischaracterize the propounded statements. Fifth, paragraphs 12, 13, 14, 29, and 36 rely on hearsay. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

In sum, all of Thomas' Responses are inadmissible and the Court should disregard Thomas' statements in these filings and in doing so, should conclude that Thomas has failed to raise a material question of fact sufficient to avoid summary judgment for CTPF. Even if the Court were to consider any of Thomas' responses to CTPF's Rule 56.1(a) Statements of Fact, for the reasons

delineated below, Thomas still failed to identify any genuine issues of material fact, and CTPF is entitled to summary judgment as a matter of law.

> **B. Counts II, IV, and VI Must be Dismissed Because Thomas Did Not Exhaust His Administrative Remedies Under the IHRA.**

When an employee files a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and later seeks a right to sue from the Illinois Department of Human Rights ("IDHR"), he must submit a copy of the EEOC's determination to the IDHR within 30 days of receiving the EEOC's findings. 775 ILCS 5/7A-102(A-1)(1); *see also Hickman v. Bd. of Educ.*, 2023 U.S. Dist. LEXIS 230823, *9 (N.D. Ill. Dec. 29, 2023) ("The failure to timely forward the EEOC's determination to the IDHR results in a failure to exhaust the administrative process that ultimately dooms the complainant's subsequent lawsuit."). Thomas posits that he complied with these steps and cites to a letter from the IDHR ("IDHR Letter") which purportedly allows him "to proceed forward with his claims." Dkt. 137 at p. 6, Ex. 7. Thomas, however, did not produce a copy of the IDHR Letter during discovery nor did he properly submit it as an additional fact, so it is not part of the record. In any event, the IDHR Letter is not evidence of administrative exhaustion. It is a pre-investigation correspondence the IDHR must send to all charging parties to inform them of their rights.

In discovery, CTPF requested any communications between Thomas and state agencies related to his employment, but Thomas stated no such documents existed. CTPF's document Request 20 sought "[a]ll communications between Thomas or Thomas' counsel and any federal or state agency, such as (without limitation) … the Equal Employment Opportunity Commission, the Illinois Human Rights Commission … related to Thomas' employment with CTPF, including the termination of same." In response, Thomas represented that he "does not possess documents with

3

communications." Exhibit 7 suggests that this representation was not accurate because it appears Thomas possessed copies of communications with the IDHR. *See* Dkt. 137, Ex. 7 at pp. 6-7.

Even if Thomas had produced the IDHR Letter in discovery and properly submitted it as an additional fact, it does not save his claims because that letter is not a right to sue. The IDHR must send employees a notice containing various information enumerated in the Illinois Human Rights Act ("IHRA"). *See* 775 ILCS 5/7A-102(A-1)(1)(i)-(v). It appears that the IDHR Letter is a copy of this statutorily required pre-investigation correspondence. For example, the IDHR Letter explains in bold, underlined text that "**[a]fter the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's finding within 30 days after service of the EEOC's findings on you." Dkt. 137, Ex. 7 at p. 7 (emphasis in original). Nothing in the IDHR Letter suggests that Thomas had the right to pursue his claims in court within 90 days.

Thomas also advances various alternative arguments contending the IDHR Letter constitutes administrative exhaustion, but these arguments are baseless. First, Thomas contends that "he only needed to submit the EEOC findings if he wanted the EEOC to take further action on his charge." Dkt. 137 at p. 5. Not only is this nonsensical, it is not true. The IDHR Letter expressly instructs "if you want [the IDHR] to take any further action on your charge, you must send the Department a copy of the EEOC's findings…." *Id.* at Ex. 7, p. 7. This instruction is consistent with the IHRA. *See* 775 ILCS 5/7A-102(A-1)(1) (explaining employee has 30 days to submit copy of the EEOC's findings to the IDHR).

Thomas next asserts that the "IDHR had notice of the EEOC's determination … meaning that the IDHR's adoption of the EEOC determination satisfies the statutory requirements." Dkt.

4

137 at p. 5. This argument fails because there is no evidence that the IDHR received notice of the EEOC's determination, nor is there evidence that the IDHR adopted the EEOC's determination.

Lastly, Thomas asserts that "[t]he 30-day requirement applied only if the [IDHR's] letter were received prior to the EEOC's findings," but this is false because the 30-day requirement always applies regardless of the IDHR Letter. The IHRA instructs that an employee "*must* submit a copy of the EEOC's determination within 30 days after service." 775 ILCS 5/7A-102(A-1)(1)(iv)(emphasis added). If the IDHR does not receive the EEOC's findings within 30 days, then it lacks jurisdiction over the charge. *See Donald v. City of Chicago*, 539 F. Supp. 3d 912, 921 (N.D. Ill. 2021). Because Thomas failed to exhaust his administrative remedies, he cannot pursue his IHRA claims.

### C. Thomas' Claims of Racial Discrimination Under Title VII and the IHRA Fail.

Whether analyzed under the *McDonnell Douglas* framework or evaluated as a whole under the *Ortiz* standard, the result is the same—Thomas cannot establish that CTPF discriminated against him due to his race. *See Ortiz v. Werner Enters., Inc.*, 824 F.3d 760, 765 (7th Cir. 2016); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

#### 1. CTPF Did Not Discriminate Against Thomas When It Did Not Promote Him.

Contrary to Thomas' assertions, he was not as qualified for the relevant promotions as the individuals who were ultimately selected. During the relevant time, Thomas applied to and interviewed for the following positions: (1) Manager of Accounting Operations; and (2) Manager of Accounting and Reporting. *See* Defendant's Statement of Material Facts, Dkt. 130, ¶¶ 13, 16, 18. Thomas applied for the Manager of Accounting and Reporting Role twice. *Id.*, ¶¶ 13, 16.

As explained in CTPF's opening brief, Thomas cannot contest that the Manager of Accounting Operations role was filled by an African American individual, Catrena Cannon ("Cannon"), in 2019. Dkt. 132 at pp. 7-8. Accordingly, any claim that CTPF discriminated against

5

Thomas because of his race—which is the same as Cannon's—when it did not hire him for that role necessarily fails.[1] As for the Manager of Reporting role, which was filled by Daniel Trevino ("Trevino") and Michael Aguilar ("Aguilar"), Thomas has not demonstrated he was better qualified than Trevino and Aguilar. Thomas mischaracterizes "fellow accountant" Phyllis Mallet's ("Mallet") testimony when he states that it "affirmatively" supports that Thomas was more qualified than Trevino. Dkt. 137 at p. 7. Indeed, Mallet testified that she "[did not] know Daniel [Trevino]'s background." *Id.* at Ex. 6, 19:3-6. Thomas does not otherwise provide any evidence that he was more qualified than Trevino. Furthermore, though Thomas denies that Aguilar was more qualified than him,[2] he does not contest that Aguilar had the required relevant educational background and experience *and* demonstrated this background and experience during his interview for the Manager of Accounting and Reporting position in 2021. *See* Dkt. 139 ¶ 20; Dkt. 137 at pp. 7-9. Thomas does not and cannot demonstrate that he was better qualified for this position than Aguilar and Trevino.

Thomas also fails to provide any evidence that CTPF's explanation for its decision not to promote him to the Manager of Accounting and Reporting role was pretext for race discrimination. Alise White ("White") testified Thomas did not demonstrate the managerial experience required for the position during the interview process. Dkt. 130 ¶¶ 19-28. Despite Thomas' bald accusation that CTPF's reasons for its decision not to promote him "*could only*" be based on his race (Dkt. 137 at p. 9 (emphasis added)), Thomas supplied no evidence to support this allegation. Thomas may feel that he should have been promoted, but that is not at issue—the only question is whether

---

[1] The Seventh Circuit Court of Appeals already held that Thomas did not exhaust his administrative remedies with respect to the 2019 promotion decision. *See Thomas v. Chi. Teachers' Pension Fund*, 2022 U.S. Dist. LEXIS 33964, at *9 (7th Cir. 2022) ("Thomas also mentions a 2019 failure to promote in his complaint, but that falls outside the 300 days, as Thomas appears to concede."). Thus, any claims arising from the 2019 promotion decision have lapsed and cannot form the basis for Thomas' discrimination claims.
[2] The record demonstrates Aguilar was more qualified than Thomas. *See* Section D(1), *infra*.

CTPF failed to promote him for discriminatory reasons, and the evidence conclusively establishes that it did not do so.

### 2. CTPF Did Not Discriminate Against Thomas Based on His Race When It Suspended or Terminated Him.

As with his failure to promote claim, Thomas has failed to establish that his suspension or termination were racially discriminatory. This is true for three reasons. First, all evidence establishes that Thomas' performance and behavioral problems, and not his race, caused his employment suspension and termination. Indeed, Thomas does not dispute that his assignments were untimely. Dkt. 137 at p. 10. Rather, he provides baseless excuses for his performance deficiencies and fails to address his well-documented insubordination. *Id.* Thomas asserts that "[n]umerous" team members experienced delays on their reconciliation projects such that his failure to complete his assignments in a timely manner would not have been an "uncommon occurrence." Dkt. 137 at p. 10. But this assertion ignores Thomas' lengthy tenure with CTPF compared to his peers. Indeed, White testified that Thomas "knew what he was doing," whereas his colleagues were still in training, and his reconciliations therefore should not have been delayed. Dkt. 130, Ex. F, 91:7-18. Further, Thomas' arguments about Aguilar's performance and CTPF's internal auditor's experiences are irrelevant, as neither have any bearing on whether Thomas performed his job satisfactorily. Dkt. 137. at pp. 10-11.

Second, Thomas cannot identify any similarly situated employee outside of his protected class who engaged in a similar pattern of conduct but was not suspended or terminated. To establish that alleged comparators were similarly situated, Thomas must show they "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018). Despite Thomas' assertion that reconciliation project delays were not uncommon,

even assuming Thomas' colleagues similarly failed to complete projects on time, Thomas has not established that any alleged comparator (which he has not identified) engaged in a similar pattern of misconduct—indeed, there is no evidence that any other accountant in Thomas' department consistently failed to timely complete assignments, intentionally attempted to delay work, or similarly failed to work cooperatively with co-workers or managers.

Third, Thomas fails to provide any evidence, or legal authority, that CTPF's explanation for his suspension or termination was pretextual. Dkt. 137 p 19. As Thomas does not respond to CTPF's arguments about pretext, his discrimination claim fails. *See Poullard v. McDonald*, 829 F.3d 844, 856-57 (7th Cir. 2016); *see also McCready v. Title Servs. of Ill., Inc.*, 2008 U.S. Dist. LEXIS 46520, at *3 (N.D. Ill. June 16, 2008) ("When a party fails to address an argument in his summary judgment brief, it is deemed a waiver."). Even if this argument were not waived, Thomas cannot demonstrate pretext because there is no evidence he was suspended or terminated for any other reason besides his failure to satisfactorily perform his job or work cooperatively with his manager or colleagues. Nor can Thomas show that the individuals involved in the decision to suspend or terminate him had any animus towards him based on his race.

**3. Thomas cannot show he suffered other disadvantageous changes in employment.**

Thomas argues that he suffered the following alleged adverse employment actions: (1) he was required to take a skills assessment; (2) he faced heightened expectations; (3) he faced heightened micromanagement from Aguilar; and (4) he was subjected to "hostility and heated discussions from Aguilar." Dkt. 137 at p. 11. To be actionable, an employment action must bring about "some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 361 (2024). Even under the *Muldrow* standard, "[n]ot everything that makes an employee unhappy is an adverse action," *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th

8

Cir. 1996), and a plaintiff must show that an action left him "worse off" with respect to the terms and conditions of his employment. *See Phillips v. Baxter*, 2024 U.S. App. LEXIS 10078, at *8 (7th Cir. 2024) (quoting *Muldrow*, 601 U.S. at 359). To begin with, CTPF required all interviewees for the 2019 promotion—including Cannon and Thomas—to answer two written questions related to accounting. Dkt. 130, Ex. F, 80:7-12. Further, Thomas cannot base his discrimination claims on the 2019 promotion decision. *See* fn. 1, *supra*. Thomas does not (and cannot) explain how the other alleged actions caused him *any* disadvantage whatsoever. Nor does Thomas identify any actual evidence supporting his claims that he was subjected to these alleged actions, a disqualifying deficiency. Neither this Court nor CTPF is required to scour the record for some basis to support Thomas' claim that he was subjected to these alleged actions. *See Jeralds ex rel. Jeralds v. Astrue*, 754 F.Supp.2d 984, 985 (N.D. Ill. 2010). Accordingly, Thomas cannot establish that he suffered any adverse employment action before his February 2022 suspension or August 2022 termination for poor performance and insubordination.

### D. Thomas Cannot Prevail on His Age Discrimination Claims.

As explained in CTPF's opening brief, Thomas' age-discrimination claims under both the federal Age Discrimination in Employment Act ("ADEA") and the IHRA should be dismissed because Thomas failed to administratively exhaust his state claims. Even if Thomas had not failed to exhaust his claims, they are unsupported, as the candidates ultimately selected were more qualified. Thomas advances three arguments trying to save his age claims. As shown below, all of them fail.

#### 1. Thomas Was Not as Qualified as Trevino and Aguilar.

Thomas evaluates his failure to promote claims under the *McDonnell Douglas* framework, and the undisputed evidence shows he cannot establish a *prima facie* case because Trevino and Aguilar were more qualified. Thomas' claims fail the fourth element because Trevino and Aguilar

had master's degrees in accountancy and had managerial experience. Dkt. 130 ¶ 23, 26. Thomas did not have a master's degree in accounting. Dkt. 130 – 4, 205:22 – 24. Since Cannon's promotion in 2019 cannot form the basis for Thomas' discrimination claims, there are only two relevant promotions: Trevino's hire in 2020, and Aguilar's hire in 2021. Thomas argues in response that he is better qualified and advances two pieces of evidence: inadmissible quotes from Mallet's deposition, and a mischaracterization of Aguilar's deposition testimony to make it appear Thomas has the same educational level. Neither save Thomas' claims.

Mallet's testimony should be disregarded because it was not submitted in accordance with Local Rule 56.1 and should be stricken. *See* Section A, *supra*. Even if it were considered, Mallet did not offer any admissible testimony that Thomas was more qualified than the other candidates. She is a senior operations accountant in the finance department. Dkt. 137, Ex. 6, 7:24-25. There is no evidence that she played a role in the decisions to hire Trevino in 2020 or rehire Aguilar in 2021 or that she had any first-hand knowledge about their qualifications relative to Thomas. Despite Mallet's non-involvement in the relevant hiring decisions, Mallet speculated that Thomas "probably would have been more qualified" but cautioned "I don't know [Trevino's] background[.]" *Id.* at 19:6-17. Thomas' counsel also asked Mallet whether she believed Thomas "was more qualified to receive [the 2021] promotion over Mr. Aguilar." Dkt. 137 Ex. 6 at 21:20-22. Mallet testified that Aguilar "previously had that role," so "I can't say that [Thomas] had more qualifications than that, no." *Id.* 21:23-22:1-3. Thus, Mallet's opinion about Trevino is inadmissible guesswork and does not constitute evidence of discrimination. *See Butler v. Ill. DOT*, 667 F. Supp. 2d 825, 833 (N.D. Ill. 2009) (testimony based on speculation, intuition, or rumor should be disregarded).

Thomas next contends that "Aguilar's educational background was the same as Mr. Thomas' at the time of rehire [in 2021]," but this misstates the evidence. Dkt. 137 at p. 9. Thomas testified that he has a Bachelor of Science in accountancy at all relevant times. Dkt. 130 Ex. D, 28:19-29:2. Aguilar testified that he earned his master's degree in accountancy in 2020. *Id.* at Ex. E, 32:5-9. CTPF rehired Aguilar in mid-2021 as the Manager of Reporting, so he already had his master's degree at that time. Dkt. 130 ¶10. Thus, Thomas' educational background was not the same as Aguilar's at the time of rehire.

### 2. White Believed That Trevino and Aguilar Were More Qualified Applicants.

White, who was 61 years old in 2021, selected Trevino and Aguilar because she believed they were more qualified, and there is no evidence that this legitimate, nondiscriminatory reason is pretext for age discrimination. White believed that Thomas lacked the experience rising to "the level of what [she] was looking for in terms of managerial experience with individuals." Dkt. 130 ¶19. Thomas must show that White is lying about her hiring rationale. *See Choy v. Chi. Park Dist.*, 2022 U.S. Dist. LEXIS 53165, *13 (N.D. Ill. Mar. 24, 2022). Thomas has failed to do so and offers no more than a personal evaluation of his own credentials.

Thomas claims that White must be lying because she "ignored the CFO experience on his resume" and "his superior accounting ability," but Thomas' own subjective evaluation of his experience will not save his claim. Dkt. 137 at pp. 8, 15. An employee's "own opinion about his qualifications—compared to others'—is not evidence of discrimination unless the comparison is so favorable to him that no reasonable person would choose not to hire him." *Felder v. Vertex Modernization & Sustainment LLC*, 2024 U.S. App. LEXIS 8411, *5 (7th Cir. 2024) (affirming summary judgment against plaintiff's ADEA claim because the employer "decided that the relevant experience of the two individuals it hired rendered them better candidates.").

11

White believed Aguilar and Trevino were better candidates because they had experience managing employees, and Thomas did not have comparable experience. Trevino was the accounting manager for property operations for three years. Dkt.130 ¶24. Aguilar previously occupied the Manager of Accounting and Reporting position. Dkt. 130 ¶27. Thomas' resume stated he briefly served as a CFO at a non-profit organization, but as White explained in her deposition, he could have been a "standalone CFO" with no supervisory responsibilities. Dkt.130 Ex. F, 90:17-22. White asked Thomas during the interview whether he had supervised someone, but Thomas did not provide any examples of supervisory experience. *Id*. at 90:5-7; 90:25-91:1.

Thomas may disagree with the weight White assigned to supervisory experience, but there is no evidence that White lied about her hiring rationale. Likewise, Thomas' limited experience as a CFO is not so favorable for him that every reasonable person would have chosen him over Aguilar and Trevino for a management role. *See Felder*, 2024 U.S. App. LEXIS 8411 at *5.

### 3. Thomas Improperly Asserts New Adverse Actions.

Unable to provide any evidence that he was denied promotions in 2020 and 2021 because of his age, Thomas appears to add termination as a new adverse action to his age claims. Thomas argues that the proper inquiries for his ADEA claim are whether "a reasonable juror could conclude that [Thomas] would have kept his job," and if "age was the cause of [Thomas'] termination or other such adverse actions as set forth in the preceding sections." Dkt. 137 p. 13. Thomas does not identify these other "adverse actions" or indicate any evidentiary or legal basis connecting them to age. *See Ammons v. Dart*, 2018 U.S. Dist. LEXIS 76439, *7 (N.D. Ill. May 7, 2018) (finding that employee's counsel "effectively waived [discrimination claim] by making this perfunctory and undeveloped argument without citing any legal authority or evidentiary support."). The ADEA analysis in Dkt. 137 focuses almost exclusively on Thomas' failure to promote claims, so it is

12

unclear whether he intended to argue termination as a component of his age claim. To the extent Thomas does, a termination theory of liability is unavailing for three reasons.

First, the undisputed evidence shows that CTPF terminated Thomas' employment for legitimate, nondiscriminatory reasons. *See* Section C.2., *supra*. Second, Dkt. 137 contains no arguments or admissible evidence suggesting that CTPF terminated Thomas' employment because of his age. An employee waives his age claims if he does not develop them in opposition to summary judgment. *See Lewis v Indiana Wesleyan Univ.*, 36 F.4th 755, 761 (7th Cir. 2022) (holding that plaintiff waived her ADEA claim because her allegations of termination "sound[ed] exclusively in race discrimination, not age discrimination," and "she neglected to mention (much less grapple with) the ADEA's requirement that age was the but-for cause of her termination."). Thomas provides no analysis explaining how his termination was based on age and does not reference a single piece of evidence that his termination was age based. He instead couches his termination in race discrimination and retaliation but does not reconcile these theories of liability with the ADEA's prohibition on mixed-motive cases. *See Vassileva v. City of Chicago*, 2024 U.S. App. LEXIS 24762, *9 (7th Cir. Oct. 1, 2024) (The ADEA does not recognize mixed-motive discrimination).

Lastly, Thomas cannot raise new adverse actions for the first time in response to summary judgment. "[A] party may neither amend its pleading by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). There is no mention in the Third Amended Complaint or in any of Thomas' charges of discrimination that he was terminated because of his age. Instead, Thomas has maintained throughout this litigation that CTPF terminated him because of his race and for engaging in protected activity. Dkt. 130 Ex. A, ¶¶ 81-82, 91-92, 120.

**D. Thomas Fails To Provide Evidence Or Authority Supporting His Retaliation Claims.**

Thomas does nothing to make his retaliation allegations under Title VII and the IHRA any more plausible. Thomas does nothing in Dkt. 137 or Dkt. 139 to counter the analysis in CTPF's Opening Brief. (Dkt. 132) The threshold requirement of a retaliation claim is engaging in statutorily protected activity. Under both Title VII and the IHRA, that activity is complaining that an employer was violating one of those laws. *See Giese v. City of Kankakee*, 71 F.4th 582, 590-91 (7th Cir. 2023) (Title VII); *Hoffelt v. Ill. Dep't of Human Rights*, 367 Ill. App. 3d 628, 638 (1st Dist. 2006). Thomas does not focus on Title VII or IHRA protected activity. Instead, he bases his allegations on his alleged whistleblowing under the state false claims act. *See* Dkt. 137 at p. 18. This cannot form the basis for the retaliation claims at issue, and Thomas offers no evidence of actual protected activity outside that discussed in CTPF's Opening Brief.

Likewise, Thomas offers no legal authority contradicting CTPF's position that most of his alleged adverse actions do not qualify under Title VII and the IHRA. Worse yet, he develops no cognizable argument beyond citations to irrelevant testimony. Therefore, this Court should find that Thomas waived this argument. *Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) ("An argument is waived by failure to properly support and develop in the brief the factual basis essential to its disposition.").

Finally, Thomas flounders on causation. Thomas must show that retaliation was a "but-for cause" of any challenged employment action. *Garcia v. SigmaTron Intl., Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016). He does not. Dkt. 137 does not connect any adverse action to Title VII or IHRA protected activity; instead, he solely focuses on his alleged state law whistleblowing. He does not mention any connection between the EEOC charge, or even this lawsuit, to any adverse action. Instead, he cites to testimony by internal auditor Adriane McCoy that, when viewed in context,

speaks only to alleged whistleblowing rather than Title VII- or IHRA-protected conduct. Dkt. 137. pp. 17, 18, Ex. 5, 130-4, 214:4–216:24. Thomas does not truly develop this argument, but merely speculates as to CTPF's motives, which cannot save his claim. *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("speculation is not evidence" to avoid summary judgment). Thomas's failure to develop a causation argument under the laws at issue here is a waiver of any such argument. *Lee*, 69 F. Supp. 3d at 888; *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Ultimately, Thomas fails to show any genuine dispute of material fact or basis in law why CTPF is not entitled to summary judgment on his retaliation claims.

### E. Conclusion.

Thomas waived any arguments regarding pretext for his discrimination claims and waived arguments regarding causation for his retaliation claim. And he failed to identify any comparators, failed to follow the Local Rules and this Court's Standing Order, and failed to amend his causes of action to include his termination until his attempted amendment in his responses to the motion for summary judgment. Thomas has thus failed to identify any issue of material fact and CTPF is entitled to judgment as a matter of law on all six counts of Thomas' Third Amended Complaint.

Dated: October 28, 2024                    Respectfully submitted,

                                                 **CHICAGO TEACHERS' PENSION FUND**

                                                 By: /s/ *Gregory H. Andrews*
                                                     One of Its Attorneys

Gregory H. Andrews
Daniel Corbett
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601
Telephone: (312) 787-4949
Gregory.andrews@jacksonlewis.com

**CERTIFICATE OF SERVICE**

I, Gregory H. Andrews, an attorney, certify that on October 28, 2024, I caused to be electronically filed a copy of the foregoing ***Defendant's Reply Memorandum Of Law In Support Of Its Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Gregory H. Andrews*