UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERT THAOMAS, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> CHICAGO TEACHERS' PENSION ) </br> FUND, ) </br> ) </br> Defendant. ) </br> ) </br> ) | Case No. 21-cv-01844 </br></br> Judge Sharon Johnson Coleman |

# MEMORANDUM OPINION AND ORDER

Plaintiff Albert Thomas ("Plaintiff") filed his Third Amended Complaint against Defendant Chicago Teachers' Pension Fund ("Defendant") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Illinois Human Rights Act, 775 ILCS 5 *et seq.* ("IHRA") and age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and the IHRA. Before the Court is Defendant's motion for summary judgment. For the following reasons, the Court grants Defendant's motion for summary judgment in total [129].

**BACKGROUND**

    **I.**    **Federal Rule of Civil Procedure 56 and Local Rule 56.1**

To start, when filing a motion for summary judgment, the moving party must file a memorandum and statement of undisputed material facts in addition to the motion. The party opposing summary judgment must file a memorandum in opposition to the motion and a response to the statement of undisputed material facts. Federal Rule of Civil Procedure 56 and Local Rule 56.1 outline the requirements for these pleadings.

1

Federal Rule of Civil Procedure 56 states that, when asserting whether a fact is or is not genuinely disputed, the assertion must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations… admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Local Rule 56.1 provides specific details for the process by which litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(2) requires the moving party to file "a statement of material facts… that attaches the cited evidentiary material." Local Rule 56.1(b)(2) requires the party opposing summary judgment to file a response to the moving party's statement of material facts "that attaches any cited evidentiary materials not attached to [the moving party's] statement [of material facts]." In responding to the statement of material facts, the non-moving party must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. *See* Local Rule 56.1(e)(2). "A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." *Id.* If the non-moving party wishes to assert a new fact that is not responsive to the moving party's asserted facts, the party opposing summary judgment can file a statement of additional material facts. *See* Local Rule 56.1(b)(3). Local Rule 56.1(b)(3) allows the opposing party to file a statement of additional material facts not asserted in the moving party's statement of facts or their response, which attaches any cited evidentiary material not attached to the statement of material facts or the response. The statement of additional material facts is separate from the response to the statement of material facts.

On reply in this case, Defendant argues that several of Plaintiff's responses to Defendant's statement of material facts fail to abide by the requirements in Federal Rule of Civil Procedure 56 and

Local Rule 56.1. Specifically, Defendant argues that Plaintiff improperly adds additional facts to his response that should have been filed separately as a statement of additional facts per Local Rule 56.1(b)(3), fails to attach evidentiary material in support of his response under Local Rule 56.1(e)(3), relies on inadmissible hearsay, and fails to properly assert additional statements of fact under Local Rule 56.1(b)(3). The Court agrees. For the following reasons, the Court strikes Plaintiff's responses, identified below, and deems these statements of fact admitted.

1. *Defendant's Local Rule 56 Statement of Material Facts and Plaintiff's Response*

    a. *Inclusion of Additional Information in Plaintiff's Response*

While Plaintiff admits many of Defendant's material statements, he simultaneously provides additional information in his responses. This is improper. *McGuire v. United Parcel Service,* 152 F.3d 673, 675 (7th Cir. 1998). Local Rule 56.1(b)(3) mandates that he file a *separate* statement of the facts so that the Court can more easily discern which facts the parties' dispute. *See* L.R. 56.1(b)(3); *McGuire,* 152 F.3d at 675. Inputting additional, non-response facts in a non-moving party's response to a statement of facts does not comply with the Local Rules. *See* L.R. 56.1(b)(3). Accordingly, the Court strikes Plaintiff's Response Nos. 9, 13, 14, 16, 17, 21, 25, 26, 28, 31, 32, 33, 34, 36, 37, 38, 39, 40, and 46 and deems the statements admitted.

    b. *Failure to Attach Evidentiary Material*

Under Local Rule 56.1, "a party must cite specific evidentiary material that controverts the fact" if denying the moving party's material statement. *See* L.R. 56.1(e)(3). Plaintiff's Responses No. 47, which admits the statement in part *only*, fails to cite evidentiary material that disputes the part of the statement that Plaintiff does not admit. Accordingly, the Court strikes Plaintiff's Response No. 47 and deems the Defendant's statement admitted and uncontested, in full.

    c. *Reliance on Hearsay*

3

Plaintiff's Response Nos. 12 and 29 rely on inadmissible hearsay. Again, this is improper. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) (finding hearsay incapable of creating a genuine issue of material fact). The Court strikes Plaintiff's Response Nos. 12 and 29 and deems the statements admitted.

> d. *Plaintiff's Additional Material Facts*

Local Rule 56.1(b)(3) requires an opposing party wishing to assert additional facts not set forth in the moving party's statement of material facts to serve and file a statement of additional material facts. The statement of additional material facts must include evidentiary material not attached to the moving party's statement of facts or non-moving party's response to the statement of facts. Here, Plaintiff inserts a section titled "Plaintiff's Additional Material Facts" in his Response to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment. This is not the proper mechanism for asserting additional facts in a Motion for Summary Judgment under the Local Rules. *See* L.R. 56.1(b)(3); *see* L.R. 56.1(d). Accordingly, the Court strikes Plaintiff's Additional Material Facts.

**II.     Undisputed Facts**

The following facts are undisputed. Plaintiff, an African-American man, worked as a Senior Accountant for Defendant between March 2015 – August 2022 on the Reporting Team in the Finance Department. Between 2017 – 2019 and, again, from mid-2021 – August 2022, Plaintiff reported to the Manager of Reporting, Michael Aguilar ("Aguilar"). Aguilar reported to the Chief Financial Officer, Alise White ("CFO White"), who, in turn, reported to the Executive Director, Carlton Lenoir ("ED Lenoir"). Both CFO White and ED Lenoir are African American.

> 1. *Plaintiff's Job Applications*

In Summer 2019, Plaintiff applied for the Manager of Accounting Operations position and was interviewed by CFO White. CFO White chose Catrena Cannon ("Cannon"), an African-

4

American woman, for the position instead of Plaintiff. David Servier, an African-American man, succeeded Cannon in the position.

On February 26, 2020, Plaintiff applied for the Manager of Accounting and Reporting position ("Manager of Reporting") for the first time. CFO White hired Dan Trevino ("Trevino") in April 2020 for the position. Trevino has a Bachelor of Science in accountancy, a Master's degree, and is a Certified Public Accountant. He previously worked as the accounting manager for property operations for three years.

On January 21, 2021, Plaintiff applied for the Manager of Reporting role for the second time. CFO White interviewed both Aguilar, upon his return from California, and Plaintiff for the role. She testified that she was looking for a candidate with the "full package of managerial experience," meaning that candidate had experience "mentoring individuals, preparing performance reviews, doing evaluations, doing recommendations in terms of individuals, what trainings they needed and such." As to Plaintiff, CFO White testified that she "saw nothing that rose to the level of what [she] was looking for in terms of managerial experience with individuals." As to Aguilar, who previously served in the same role from 2017 to 2019, CFO White believed Aguilar was qualified for the job based on his responses during the interview, his experience as the manager of accounting for the city of Thousand Oaks in California, and his educational background and experience. Aguilar holds a Bachelor of Science in accountancy and a Master's degree. Aguilar was ultimately hired for the Manager of Reporting position.

2. *Plaintiff's Alleged Race Discrimination*

In 2018, Aguilar facilitated a meeting with the Legal Department whereby Finance Department employees, including Plaintiff, were informed about the need to sign non-disclosure agreements. Plaintiff alleges that, after the meeting, Aguilar confronted Plaintiff alone in the bathroom and called him the n-word. Plaintiff testified that Aguilar often used the n-word in a "joking" manner and that

5

he only found it offensive on the occasion in which Aguilar allegedly directed it towards him. Plaintiff did not report this incident to Human Resources and could not recall whether he reported it to the Internal Director of Audit, Adriane McCoy, to whom he reported many other internal complaints. No other Finance Department employees heard Aguilar use the n-word. Aguilar denies using the n-word.

    3. *Plaintiff's Performance Reviews*

Plaintiff was first formally disciplined for poor work performance in July 2018. Between 2021 and 2022, Plaintiff's work performance gradually declined. Plaintiff consistently failed to complete bank reconciliations, a task Plaintiff had performed without issue throughout his employment, timely and accurately, despite no change in the deadlines or Plaintiff's workload. In late 2021, Plaintiff began arguing with Aguilar over how to perform bank reconciliations, which likewise caused Plaintiff to miss work-related deadlines. By 2022, Finance Department leaders, including CFO White, determined that Plaintiff was intentionally attempting to delay his work.

ED Lenoir and McCoy met with Plaintiff to listen to his concerns in January 2022. During the meeting, ED Lenoir and McCoy explained that Plaintiff was expected to listen to Aguilar and complete his work assignments as directed by both Aguilar and CFO White. After this meeting, Plaintiff continued arguing with Aguilar and failing to timely and accurately complete bank reconciliations.

A month later, Defendant placed Plaintiff on a thirty-day suspension. At the end of the suspension period, Plaintiff applied for, and was granted, FMLA leave of absence. Plaintiff returned to work on July 9, 2022. Upon return, Plaintiff was assigned to health insurance reconciliations. Plaintiff continued to fail to timely complete his work. On August 5, 2022, CFO White, in consultation with ED Lenoir, decided to terminate Plaintiff.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (citation omitted).

**DISCUSSION**

### I. Counts II, IV, and VI: IHRA Claims

Plaintiff asserts his claims under Title VII and IHRA. Defendant argues that Plaintiff's IHRA claims are barred because Plaintiff failed to exhaust his administrative remedies under the statute. Plaintiff attaches a letter from the Illinois Department of Human Rights (the "Department") as an exhibit in support of his response, alleging that the letter permitted him to proceed with his claims under the IHRA (the "Letter"). On reply, Defendant contends that Plaintiff never produced the Letter in discovery nor was it properly submitted as an additional fact in opposition to the motion for summary judgment, so it is not part of the record and should not be considered by the Court.

In reviewing the Letter, it is clear that the Letter was not submitted in discovery as the document is not Bates-stamped. Nor is the Letter submitted as an additional fact as it is not cited as evidence in a statement of additional material facts, as required by the local rules. *See* L.R. 56.1(b)(3). "[T]he [C]ourt need consider only the cited materials" in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c)(3). As the Letter is neither in the cited materials of the Motion for Summary

7

Judgment nor in the record, the Court will not consider the Letter in its ruling. Plaintiff has failed to adduce evidence that he exhausted his administrative remedies and therefore, his IHRA claims cannot proceed.

## II. Count I: Race Discrimination

In evaluating the merits of an employment discrimination action, the Seventh Circuit has ruled that the ultimate question is whether the evidence would allow a reasonable factfinder to conclude that the plaintiff's protected characteristic caused the adverse employment action. *See Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). In presenting this evidence, a plaintiff may employ the *McDonnell Douglas* burden-shifting framework or demonstrate that, in considering all relevant evidence, a reasonable factfinder must conclude that the employer engaged in an adverse action based on such protected characteristic. *See McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 368 (7th Cir. 2019). Under the *McDonnell Douglas* framework, a plaintiff must provide evidence that (1) he is a member of a protected class; (2) his job performance met the employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) a similarly situated person outside his protected class received more favorable treatment. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff meets each element, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See McDaniel,* 940 F.3d at 368. If defendant can do so, the burden shifts back to plaintiff to offer evidence that defendant's explanation is pretextual. *See id.* at 368.

As Plaintiff meets the first and third prongs of the *McDonnell Douglas* framework, the main dispute is whether the second and fourth prongs are met. The undisputed facts show that Plaintiff's job performance failed to meet Defendant's legitimate expectations. Starting in July 2018, Plaintiff was disciplined for poor work performance. Between 2021 – 2022, Plaintiff's work performance gradually declined, resulting in Plaintiff failing to complete the bank reconciliations timely and

accurately despite no change in workload or deadlines. Following the January 2022 meeting between Plaintiff, CFO White, and ED Lenoir discussing Plaintiff's shortfalls and Defendant's expectations, Plaintiff still continued to fail to complete his work in a timely and accurate manner. Upon return from his 30-day suspension a month later, Plaintiff still failed to meet deadlines.

All of these actions, spanning from 2018 – 2022, demonstrate that Plaintiff's job performance did not meet Defendant's legitimate expectations. These expectations were communicated to Plaintiff. Despite this communication, Plaintiff continued to fail to perform his job adequately. The record shows that Plaintiff's unprofessional behavior and failure to meet deadlines led to this termination. Accordingly, Plaintiff has failed to offer evidence that would allow a reasonable factfinder to conclude that Plaintiff's job performance met Defendant's legitimate expectations to successfully allege race discrimination under Title VII.

### III. Count III: Age Discrimination

The ADEA protects workers who are 40 years of age and older from age-based employment discrimination. *See* 29 U.S.C. § 623(a)(1). The same legal standard for race discrimination applies to age discrimination. *See Ortiz*, 834 F.3d at 765. As with Plaintiff's race discrimination claim, the main issue presented before the Court is whether Plaintiff offered evidence to show that his job performance met Defendant's legitimate expectations under the second prong of the *McDonnell Douglas* framework.

As discussed above, *see supra* Section II, the undisputed facts show that Plaintiff's job performance did not meet Defendant's legitimate expectations to sufficiently prove age discrimination under the ADEA.

### IV. Count V: Retaliation

As with employment discrimination cases, for retaliation cases in the employment context, a plaintiff likewise must provide evidence that would allow a reasonable factfinder to conclude that the

9

plaintiff's protected characteristic caused the discharge or other adverse employment action. *McDaniel,* 940 F.3d at 370. Here, a plaintiff may utilize the *McDonnell Douglas* burden-shifting framework as well. *Id.* at 370.

In the retaliation context, under the *McDonnell Douglas* framework, "a plaintiff must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly-situated employees who did not engage in protected activity." *Id.* at 370-71 (internal citation omitted). A plaintiff must show that the retaliation was the "but-for" cause of the adverse action, "not merely a contributing factor." *Id.* at 371 (internal citation omitted).

The Court need not decide whether Plaintiff engaged in protected activity under the *McDonnell Douglas* framework. Like his discrimination claims, Plaintiff's retaliation claim fails as the undisputed facts show that Plaintiff's job performance did not meet Defendant's legitimate expectations. *See supra* Section II. Accordingly, a reasonable factfinder could not conclude that any alleged retaliation caused Plaintiff's termination, or any other adverse employment action.

**CONCLUSION**

For these reasons, the Court grants Defendant's motion for summary judgment in its entirety [129].

**IT IS SO ORDERED.**

Date: 3/13/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge